COURT OF CRIMINAL APPEALS OF TEXAS

Rodolfo Alvarez Medrano, Appellant

v.

The State Of Texas, Appellee

No. AP-75,320

On Direct Appeal from the 332nd Judicial District Court

of Hidalgo County, Texas

Trial Court Cause Number CR-0942-03-F

Appellant's Brief on Direct Appeal          **ORIGINAL**

FILED IN
COURT OF CRIMINAL APPEALS

DEC 2 1 2006

Louise Pearson, Clerk

Respectfully submitted
Hector J. Villarreal
SBN 20582700
P.O. Box 3867
Edinburg, Texas 78540
(956) 383-8131 Telephone
(956) 383-6603 Facsimile


O. Rene Flores
SBN 24012637

## STATEMENT OF THE IDENTITY OF PARTIES AND COUNSEL

The Appellant is Rodolfo Alvarez Medrano, TDCJ # 00999501, who is confined at the Institutional Division of the Texas Department of Criminal Justice at the Polunski Unit, 3872 FM 350 South, Livingston, Texas 77351. The Appellant may be served with process in this action by delivering the same to his undersigned counsel of record at the address shown hereon. The Appellant was represented at trial by undersigned counsel and O. Rene Flores, of PO Box 1769, Edinburg, Hidalgo County, Texas 78540.

Appellee State of Texas is represented on Appeal by Theodore Hake, Assistant Criminal District Attorney, Appellate Division of the Hidalgo County District Attorney's Office, 4th Floor, Hidalgo County Courthouse, 100 N. Closner, Edinburg, Texas 78539.

Counsel for the Appellant herein certifies that the listed persons, parties and/or entities herein have rights which may be adversely affected by the outcome of this action in this Court so that the Judges of this Court may review the same to determine the need for recusal or disqualification, if necessary , herein.

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This is a Death Penalty Case and the issues raised herein are important not only for the disposition of this cause but perhaps the jurisprudence of the State. Appellant respectfully requests the opportunity to argue the constitutionality of the death penalty scheme as applied to the facts of this case together with the law of parties and the law of conspirator responsibility. Appellant further requests the opportunity to voice the significance of his *Enmund* and *Tison* claims.

Further, Appellant believes that Oral Argument would assist this Court in the proper disposition of the issues raised on this direct capital appeal.

## TABLE OF CONTENTS

Statement of the Identity of Parties and Counsel.................2

Table of Contents.....................................................................4

Index of Authorities.........................................................13-21

Statement of the Case.............................................................22

Points of Error......................................34,35,44,45,59,60,74,75

.............................................85,86,87,91,92,99,109,113,119

Statement of the Facts............................................................23

Summary of the Arguments........................................................32

Arguments and Authorities............35,45,60,75,87,100,113,119

Point of Error Number 1.........................................................34

The Evidence Is Legally And Factually Insufficient To Support Appellant's Conviction For Capital Murder.

Point of Error Number 2.........................................................34

The Evidence Is Insufficient To Support A Conviction For Capital Murder Since There Was No Evidence To Support A Nexus Between A Theft and the Murders.

Point of Error Number 3.........................................................35

The Evidence At Trial Was Legally Insufficient To Establish Appellant's Specific Intent To Kill.

Point of Error Number 4................................................................44

Appellant's Substantive Due Process Rights Under The United States Constitution were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

Point if Error Number 5................................................................44

Appellant's Equal Protection Rights Under The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under The Texas Penal Code 7.02(b).

Point of Error Number 6................................................................44

Appellant's Rights Under The 8th Amendment of the United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

Point of Error Number 7................................................................45

Appellant's Procedural Due Process Rights Under The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

Point of Error Number 8.........................................................................59

Appellant's 5th Amendment Right To Due Process, Notice Of His Accusation, Was Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties.

Point of Error Number 9.........................................................................59

Appellant's 14th Amendment Equal Protection And Due Process Rights Were Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties.

Point of Error Number 10.......................................................................59

Appellant's 6th Amendment Right To A Jury Determination Of His Case Was Violated Because While The Indictment Failed To Plead Party/Co-Conspirator Liability, The Jury Was Required To Find Such Beyond A Reasonable Doubt Such That The Application Of The Death Penalty Scheme To This Appellant Was Unconstitutional.

Point of Error Number 11.......................................................................60

Appellant's Right To Notice Was Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plea The Law Of Parties

Violating   Article   1   Section   10   Of   The   Texas
Constitution.

Point Of Error Number 12.............................................................................60

Appellant's Right To Jury Unanimity Was Denied by
the Trial Court Overruling Appellant's Objection To The
Indictment For Failing To Plead The Law Of Parties
Violating   Article   V,   Section   13   of   the   Texas
Constitution and Article 36.29 of the Texas Code of
Criminal Procedure.

Point of Error Number 13.............................................................................74

The   Court   Erred   In   Allowing   Testimony   From
Detective   Robert   Alvarez   Regarding   Criminal   Street
Gangs In Texas.

Point Of Error Number 14.............................................................................74

The Court Erred In Allowing Testimony During The
Guilt   Innocence   Phase   Of   The   Trial   From   Detective
Robert Alvarez Regarding Appellant's Membership In The
Tri-City Bombers Since This Evidence Was Cumulative Of
Evidence Already Admitted, violating Appellant's 5th,
6th,   and   14th   Amendment   rights   under   the   U.S.
Constitution.

Point Of Error Number 15.............................................................................74

The Court Erred In Allowing Testimony From Detective Robert Alvarez Regarding Appellant's Membership In The Tri-City Bombers Violating Appellant's First Amendment Rights.

Point Of Error Number 16................................................................74

The Trial Court Reversibly Erred By Admitting Evidence Of Appellant's Gang Membership At The Guilt/Innocence Stage of Trial, violating Appellant's 5th, 6th and 14th Amendments under the United States Constitution.

Point Of Error Number 17................................................................74

The Trial Court Reversibly Erred By Admitting Evidence At The Guilt/Innocence Stage Of Trial Of Appellant's Knowledge Of An Unrelated Murder, The Donna Killings.

Point Of Error Number 18................................................................74

The Trial Court Reversibly Erred By Admitting Hearsay testimony of Robert Alvarez in violation of Appellant's 6th Amendment right to confrontation and cross-examination.

Point Of Error Number 19.........................................................................75

The Trial Court Reversibly Erred By Admitting Hearsay Testimony Of Robert Alvarez.

POINT OF ERROR NUMBER 20.......................................................................85

The Court Erred In Qualifying Detective Robert Alvarez And Allowing His Testimony As A "Gang Expert."

Point Of Error Number 21.........................................................................86

The Court Reversibly Erred In Admitting State's Exhibit 101 Violating Defendant's 6th And 14th Amendments Right To Confront And Cross Examine.

Point Of Error Number 22.........................................................................86

The Court Erred In Admitting State's Exhibit 101 As Hearsay.

Point Of Error Number 23.........................................................................86

The Trial Court Erred In Allowing Testimony Over Hearsay Objections Regarding Ramiro Ruiz' Testimony.

Point Of Error Number 24.........................................................................87

The Trial Court Reversibly Erred In Allowing Hearsay Testimony Of Ramiro Ruiz' Violating Defendant's 6th And 14th Amendments Right To Confront And Cross Examine.

Point Of Error Number 25.........................................................................91

The Court Reversibly Erred By Charging The Jury To Use One Theory Of Parties Liability (*Intention To Aid/Assist A Conspiracy*) To Make Appellant A Conspirator To Commit Robbery, And Then Using A Theory Of Conspiracy Liability (*Should Have Anticipated*) To Make Appellant Responsible For The Acts Of Co-Conspirators.

Point Of Error Number 26………………………………………………………………………92

The Evidence Was Constitutionally Insufficient (*Jackson V. Virginia*) To Convince Any Rational Juror Beyond Reasonable Doubt That Appellant Was Guilty Of Capital Murder Under The Law Of Parties, Except To The Extent That The Jury Might Have Been Misled By The Charge Into Believing That A Person Who Assists A Conspiracy In The Way Appellant Did Can Be Regarded As A Co-Conspirator Himself.

Point Of Error Number 27………………………………………………………………………99

The Sentencing Scheme Contemplated In Article 37.071 Section 2(A)(2)(B)(2) Of The Texas Code Of Criminal Procedure Is Unconstitutional Because It Allows The Jury To Consider The Law Of Parties In Answering Special Issue Number Two At Punishment.

Point Of Error Number 28.......................................................................99

   The Evidence Was Insufficient To Prove Appellant
Actually Anticipated That A Life Would Be Taken As
Contemplated By Special Issue Number Two.

Point Of Error Number 29.......................................................................99

   The Evidence Did Not Satisfy The Constitutional
Requirements Of *Enmund V. Florida* And *Tison V. Arizona*
So That The Imposition Of The Death Penalty On
Appellant Is Inconsistent With The Eighth And
Fourteenth Amendments To The United States
Constitution.

Point of Error Number 30.....................................................................109

   The Trial Court Reversibly Erred By Admitting
Evidence Of Appellant's Knowledge Of An Unrelated
Murder, The Donna Killings.

Point of Error Number 31.....................................................................113

   The Trial Court Reversibly Erred By Admitting
Appellant's Oral Statement As Voluntarily Given.

Point of Error Number 32.....................................................................113

   The Trial Court Reversibly Erred By Admitting
Recorded Statement Of Appellant In Violation Of Article
38.22 Of The Texas Code Of Criminal Procedure.

Point of Error Number 33........................................................................113

The Trial Court Reversibly Erred By Admitting Appellant's Oral Statement In Violation Of Appellant's 5th Amendment Rights.

Point of Error Number 34........................................................................119

This Case Should Be Reversed For Cumulative Error.

Prayer........................................................................................................121

Certificate of Service............................................................................123

<u>INDEX OF AUTHORITIES</u>

**CASES**

- <u>Abdnor v. State</u>, 871 S.W.2d 726 731-732 (Tex.Crim.App.1994)........................................................................92

- <u>Alba v. State</u>, 905 S.W.2d 581, 585 (Tex.Crim.App.1995), cert denied, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996)....................................110

- <u>Albrecht v. State</u>, 486 S.W.2nd 97,101(Tex.Crim.App. 1972)....................................................................................76,78

- <u>Alvarado v. State</u>, 912 S.W.2nd 199,207(Te.Xrim.App.1995)...........................................................43

- <u>Almanza v. State</u>, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)........................................................................59

- <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)....................................65,66,72,73

- <u>Arline v. State</u>, 721 S.W.2d 348, 351 (Tex.Crim.App.1986)...................................................................59,92

- <u>Autry v. State</u>, 626 S.W.2d 758 (Tex.Crim.App.1982)......41

- <u>Brooks v. State</u>, 132 S.W.3d 702 (Tex.App. – Dallas 2004, pet. filed)..........................................................89

- <u>Booker, III v. State</u>, 929 S.W.2d 57 (Tex.App. – Beaumont, 1996).......................................................................109

- <u>Cannon v. State</u>, 691 S.W.2d 664 (Tex.Crim.App.1985)...41

- <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct.1354, 1374, 158 L.Ed.2d 177 (2004)................................................88,89

- <u>Cruz v. State</u>, 629 S.W.2d 852 (Tex.Crim.App.1982, rev. ref'd)................................................................................42

- <u>Cook v. State</u>, 884 S.W.2d 485, 487 (Tex.Crim.App.1994)......................................................................49

- <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).................................................................73

- <u>Dawson v. Delaware</u>, 503 U.S. 159, 161 (1992)......................79

- <u>Edwards v. Arizona</u>, 451 U.S. 484 (1981)......................113,115

- <u>Elkins v. State</u>, 647 S.W.2d 663, 665 (Tex.Crim.App.1983)....................................................................110

- <u>English v. State</u> 592 S.W.2d 949, 954-955 (Tex.Crim.App.1980), cert denied, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980)................................................52, 53, 54, 55, 56, 57, 58

- <u>Enmund v. Florida</u>, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)...............................................................3,57, 58, 99, 102, 103, 104, 105, 106, 107, 108, 120

- <u>Ford v. State</u>, 484 S.W.2d 727 (Tex.Crim.App. 1972)....................................................................................78

- <u>Gardner v. State</u>, 730 S.W.2d 675 (Tex.Crim.App. 1987)................................................................................51, 68

14

- Gilbert v. State, 781 S.W.2d 296 (Tex.App. – Ft.Worth, 1988...................................................................................109

- Griffin v. State, 614 S.W.2d 155 (Tex.Crim.App.1981).................................................................38

- In Re Winship, 397 U.S. 358,90 S.Ct. 1068 (1970)..............................................................................72

- Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);.................................................38, 92

- Jones v. State, 479 S.W.2d 307 (Tex.Crim.App. 1972)................................................................................78

- Jones v. State, 481 S.W.2d 900 (Tex.Crim.App. 1972)................................................................................78

- Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311(1999)..........................................65

- Leal v. State, 800 S.W.2d 346 (Tex.App. – Corpus Cristi 1990, pet. ref'd)..........................................51,68

- Lilly v. Virginia, 527 U.S. 116, 136-137, 119 S.Ct. 1900 (1999)........................................................87

- Livingston v. State, 542 S.W.2d 655 (Tex.Crim.App.1976)..........................................................56, 62

- Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978)..............................105

15

- <u>Marable v. State</u>, 85 S.W.3d 287
  (Tex.Crim.App.2002)...........................................................63

- <u>Mason v. State</u>, 905 S.W.2d 570, 577
  (Tex.Crim.App.1995)...........................................................79

- <u>McCravy v. State</u>, 642 S.W.2d 450
  (Tex.Crim.App.1980)...........................................................61

- <u>McDonald v. State</u>, 179 S.W.3d 571, 576
  (Tex.Crim.App.2005)...........................................................78

- <u>Miranda v. Arizona</u>, 451, U.s. 477, 484-485, 101 S.Ct.
  1880,1884-1885, 68 L.Ed.2d 378(1981).......................................115

- <u>Montgomery v. State</u>, 810 S.W.2d 372, 387-388
  (Tex.Crim.App.1991)(opinion on reh'g).............................79,112

- <u>Morissette v. v. United States</u>, 342 U.S. 246, 250-252,
  72 S.Ct. 240, 243-244, 96 L.Ed.2d 88 (1952).........................49

- <u>Mozon v. State</u>, 991 S.W.2d 841, 846-847
  (Tex.Crim.App.1999)...........................................................78

- <u>Navarro v. State</u>, 776 S.W.2[nd] 710 (Tex.App.- Corpus
  Christi 1989)...........................................................97, 98, 103

- <u>O'pry v. State</u>, 642 S.W.2d 748 (Tex.Crim.App.1982)......41

- <u>Planter v. State</u>, 9 S.W.3d 156 (Tex.Crim.App.
  1999)...........................................................64, 65

- <u>Pitts v. State</u>, 569 S.W.2d 898, 900
  (Tex.Crim.App.1978)...........................................................63

16

- Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)........................................................88

- Powell v. State, 478 S.W.2d 95 (Tex.Crim.App.1972)......................................................78

- Reyes v. State, 938 S.W.2d 718, 723 (Tex.Crim.App.1996)......................................................92

- Riles v. State, 595 S.W.2d 858 (Tex.Crim.App.1980)......40

- Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed2d 556 (2002)...........................................65, 66, 72, 73

- Rodriguez v. State, 486 S.W.2d 355 (Tex.Crim.App. 1972)......................................................78

- Rose v. State, 752 S.W.2d 529, 553 (Tex.Crim.App.1988)(opinion on reh'g)..........................111

- Ruiz v. State, 579 S.W.2d 206, 209 (Tex.Crim.App. 1979)...........................................49, 50, 56, 57, 93

- Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).......................................66

- Shelby v. State, 819 S.W.2d 544, 546 (Tex.Crim.App.1991).....................................................87

- Smith v. State, 646 S.W.2d 452, 455 (Tex.Crim.App.1983).....................................................110

- Smith v. Illinois, 469 U.S. 91, 95 (1984)................................113

17

- Snow v. State, 721 S.W.2d 943, 949 (Tex.App.— Houston[1st Dist.] 1986, no pet.)........................................................47

- Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)..............3,57,58,99,102,107,108,120, 121

- Turner v. State, 805 S.W.2d 423 (Tex.Crim.App.1991) ........................................................51,69

- United States v. Mashack, 235 F.3d 556 (5th Cir. 2000) ........................................................72

- United States v. Ramirez, ---, F.3d --- (#99-50768, 5th Cir., August 1, 2000)........................................................72

- Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex.Crim.App.2005) ........................................................63

- Wilder v. State, 583 S.W.2d 349 (Tex.Crim.App.1979)...56

- Wilkerson v. State, 657 S.W.2nd 784, 793 (Tex.Crim.App. 1983) ........................................................114, 115

- Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991 49 L.Ed.2d 944 (1976)........................................................105

**STATUTES**

- V.T.C.A. Penal Code Section 1.07(a)(22) ........................................62,72

- V.T.C.A. Penal Code Section 6.02........................................................50

- V.T.C.A. Penal Code Section 6.03(a)........................................................68

- V.T.C.A. Penal Code Section 6.03(b)........................................................70

- V.T.C.A. Penal Code Section 6.03(d)........................................................50

- V.T.C.A. Penal Code Section 7.01............................................62,63,94

- V.T.C.A. Penal Code Section 7.01(a)...........................................62,

- V.T.C.A. Penal Code Section 7.01(b)...........................................62

- V.T.C.A. Penal Code Section 7.01(c)...............................62,63

- V.T.C.A. Penal Code Section 7.02 (a)(2).................97

- V.T.C.A. Penal Code, Section 7.02(b)..........................................................

- ...............................................45-48,50,55-58,64,93,95

- V.T.C.A. Penal Code Section 19.02...........................................68

- V.T.C.A Penal Code Section 19.02(a)(2)...........................................

- ...............................................53

- V.T.C.A. Penal Code Section 19.02 (b)(1)...........................60

- V.T.C.A. Penal Code Section 19.03...........................................

  ...............................................51,52,60,62,68,69,

- V.T.C.A. Penal Code, Sections 19.03(a)......................................48,

- V.T.C.A. Penal Code Section 19,03 (a)(2)...................................

  ...............................................39,40,53,71,

- V.T.C.A. Penal Code Section 19.03(a)(7)(a).........

- ...............................................35,38,39,60,61

- V.T.C.A. Penal Code Section 29.01..................................41

- V.T.C.A. Penal Code Section 29.01(1)...........................40,

- V.T.C.A Penal Code Section 29.02........................................39,40

- V.T.C.A Penal Code Section 29.03............39,40

19

- V.T.C.A. Penal Code Section 71 ...................................75

- V.T.C.A. Penal Code Section 71.01...............................80

- V.T.C.A. Penal Code Section 103 (a)...............................47

- V.A.C.C.P. Article 21.03.................................................61

- V.A.C.C.P. Article 36.29 ............................................60,64

- V.A.C.C.P. Article 37.071 Section 2 (a)(2)(b)(2)

  ...................................................99,100,101

- V.A.C.C.P. Article 38.22 Section

  3.......................................113,117,118,

- Texas Rules of Appellate Procedure 44.2(a)..........................58

- Texas Rules of Evidence

  403...............................................31,34,

- Texas Rules of Evidence 404(b)..................................30,33,79,111

- Texas Rules of Evidence 702.....................................86,

**TEXAS CONSTITUTION**

- Texas Constitution Article V, Section 13.........................60,64

- Texas Constitution Article 1, Section 10.......................60,63,

**UNITED STATES CONSTITUTION**

- United States Constitution, Amendment 1

  ..........................................................................34,74,79

- United States Constitution, Amendment 5

  ...................................32,34,44,58,59,63,65,66,71,92,113,117

- United States Constitution, Amendment 6…………………………………
  …………………32,34,58,59,63,65,66,71,74,86,87,88,92,109,119

- United States Constitution, Amendment 8…………………………………
  ………………………33,44,58,92,99,102,104,106,109,112,121

- United States Constitution, Amendment 14…………………………………
  32,33,34,44,45,58,59,63,71,86,87,88,92,99,104,109,112,
  121

## STATEMENT OF THE CASE

Appellant was indicted by a Hidalgo County Grand Jury for the offense of Capital Murder, charging that Appellant on or about the 5th day of January, 2003 intentionally and knowingly caused the deaths of Jimmy Almendarez, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo by shooting them with a firearm, and that those murders were committed during the same criminal transaction. (CR at 002); (RR 2 at 4-6)

Appellant was tried and subsequently convicted of that offense after a jury trial in the 332nd Judicial District Court of Hidalgo County, Texas. At the conclusion of the punishment phase of Appellant's trial and based on the jury's answers to the "special issues", Appellant was assessed a sentence of death. (CR at 574-583; 645-650; 653-656)(RR 2 at 4-6);(RR 38 at 12-13); (RR 46 at 55-58)

This automatic appeal raises several evidentiary questions and several Constitutional questions for this Honorable Court to consider.

22

## STATEMENT OF FACTS

At approximately 1:10 a.m. on January 5th, 2003, law enforcement responded to 2915 East Monte Cristo Rd, Edinburg, Texas in reference to a "pseudo-cop" style robbery. (RR 38 at 20-21) Upon arrival, Edinburg Police Officers discovered two residences at the aforementioned address containing the deceased bodies of six (6) Hispanic males believed to have been shot to death. (RR 38 at 21-31) Responding Officer Walls testifies that the layout of the subject property involved two buildings, one to the east and one to the west. (RR 38 at 22) A lifeless body was discovered just outside the east side building. (RR 38 at 25) Walls and fellow responding officer Reynero checked the east side building where four more lifeless bodies were discovered. (RR 38 at 27-28) They then made their way to the west side building where victim number six was discovered. (RR 38 at 31).

The on-call investigator Ramiro Ruiz responded to the crime scene and was met by other investigators including some of Edinburg Police administration. (RR 39 at 14-15). At this point, investigators confirmed

23

the six deaths and the "investigation" was initiated.
(RR 39 at 15-16) The investigation began with
photographing, videotaping and general processing of
the scene by marking items believed to be evidence. (RR
39 at 16-17) During Investigator Ramiro Ruiz'
testimony, State's exhibits 1-25 were offered. These
exhibits included items found at the scene, some of
which were later subjected to scientific testing. (RR
39 at 105) During defense counsel's voir dire
examination of the witness, Investigator Ruiz testified
that in fact he was not sponsoring the chain of custody
of State's exhibits numbers 1-25. (RR 39 at 87-98).
The Court admitted State's exhibits 1-25 over defense
objection. (RR 39 at 92, 98) Several of these exhibits,
which included spent casings and projectiles, surfaced
again when Investigator Ramiro Ruiz testified regarding
the autopsies performed and that he "learned" what type
or caliber bullets were used in the commission of the
offense.(RR 39 at 129). Investigator Ramiro Ruiz also
testified about State's Exhibit 100, a videotaped
recording of the crime scene. When the tape was
offered, defense counsel voir dired the witness.

24

During this voir dire examination, Ruiz testified that the tape being offered in fact was a copy. However, while he himself did not make the copy, the "original should be in evidence."(RR 39 at 106-109).

The scene was described as 2915 E. Monte Cristo, Edinburg, Texas, a property with an open field on the north side property line and Monte Cristo Road on the south side property line running east and west. A fence on all four sides surrounded the property. There are residences on each side to the west and to the east and the frontage was approximately 200 feet. On the property there exists two residences, one on the east side one on the west side facing south. Behind the residences, was a mound of cement and dirt indicating either a broken foundation or trash dump. Behind the west side residence was an aluminum-covered carport apparently used to store bails of hay surrounded by several vehicles apparently not in operating condition. There were three vehicles parked on the west side of the east side house facing to the east. (RR 39 at 69-73); (State's Exhibit No. 96)

On January 13, 2003, Crime Stoppers received a tip from an anonymous woman who provided the name and address of Guadalupe Bocanegra and believed that Bocanegra was somehow involved in these killings. Surveillance was initiated and investigators ultimately conducted a "knock" where Bocanegra then became a person of interest.    It was determined that Guadalupe Bocanegra was a member of the Tri-City Bombers and during the course of his cooperation he led investigators to houses apparently belonging to fellow gang members.  Guadalupe Bocanegra provided information to Investigator Ramiro Ruiz that educated the investigation and revealed that Juan Arturo Villarreal Cordova a.k.a. "Juanon," and "Gallo" were involved in the murder of the victims.   Guadalupe Bocanegra also provided that "Gallo", and Appellant a.k.a. "Kreeper," not only were members of the Tri-City Bombers but were also involved in the murders.   Guadalupe Bocanegra's information further revealed that he himself had observed weapons at Appellant's residence. (RR 39 at 133-140).   Bocanegra   further   provided   information implicating his brother leading to the surveillance and

subsequent arrest of Marcial Bocanegra. (RR 39 at 131);(RR 39 at 131-132) Investigator Ramiro Ruiz further learned from Guadalupe Bocanegra that in fact his brother Marcial Bocanegra was also involved in these murders. (RR 39 at 141)

The investigation proceeded to the residence of Marcial Bocanegra where he was surveilled and arrested on January 15, 2003. Marcial Bocanegra provided information to Investigator Ramiro Ruiz that there were still other individuals involved in the shooting (RR 39 at 143) To this point, Marcial Bocanegra is the only arrest made in connection with these murders. (RR 39 at 144) On January 21, 2003, Marcial Bocanegra gave a statement. After said statement, based on information given by Marcial Bocanegra, further arrests were made. (RR 39 at 144).

On January 24, 2003, a multi-agency task force was organized of the Edinburg Police Department, Department of Public Safety, Texas Rangers, U.S. Marshals, Border Patrol, and DEA, to conduct search and arrest warrants on those individuals named by Marcial Bocanegra, including Appellant Rodolfo Medrano. At this point

arrests were being made simultaneously throughout the Valley. (RR 39 at 146-147).

Investigator Ramiro Ruiz was part of the team who executed the warrants on Rodolfo Medrano.   At approximately 6:00 a.m. on January 24, 2003 Investigator Ramiro Ruiz and the rest of his multi-agency task force team arrived at Appellant's residence to arrest him.   Appellant was immediately taken into custody and his residence, including his in-law's separate residence, was searched. Several items were collected from Appellant's residence for evidentiary purposes. (RR 39 at 148-150).

Investigator Ramiro Ruiz compiled a chart setting out the names of the individuals involved in these murders, the dates of their arrests and whether or not these individuals gave a statement. (RR 40 at 20-21)(State's Exhibit 101)  Through information provided by these suspects, and developed as a result of these arrests, investigators learned that Jeffrey Juarez, a.k.a. "Dragon," was a leader of a gang and that he (Juarez) ordered several of his subordinate gang members, also identified through the investigation as

28

Reymundo Sauceda, a.k.a. "Kito," Robert Cantu, a.k.a. "Robbie," Salvador Solis, a.k.a. "Little Sal," Juan Miguel Nunez a.k.a. "Perro," Juan Ramirez, a.k.a. "Ram," and Jorge Espinoza Martinez, a.k.a. "Choche," to conduct a police-type narcotics raid at the aforementioned address to steal a large quantity of marijuana being kept there. Investigator Ramiro Ruiz testifies that while Appellant was not present of the scene of the murders, Appellant supplied the weapons that were used in the commission of the offense. (RR 40 at 29-30).

Detective David Valdez testified regarding the evidence that was recovered from the crime scene. (RR40 at 39-141). He also admitted and testified that Appellant was not at the crime scene and further conceded that the investigation revealed no evidence that Appellant was at the crime scene. Still further, Valdez testified that items recovered from Appellant's home, pursuant to the arrest and search warrants executed that it appeared to be for legitimate and legal use. (RR 41 at 6-41) Even Detective Robert Alvarez, the State's gang expert testified that he knew

29

of no evidence solidifying the State's allegation that Appellant knew what these "people" were going to do." (RR 41 at 9-10); (RR 44 at 153-155). Valdez also testified regarding items recovered pursuant to a search warrant executed at Appellant's residence. Those items revealed that Appellant owned a computer repair business and that at no time did the State initiate forfeiture proceedings regarding any of the money that was recovered from Appellant's residence. (RR 41 at 10-15).

Detective Reyes Ramirez testified before the jury regarding his involvement as the "lead investigator" in this case. (RR 43 at 19-116). Specifically, Detective Ramirez admitted and testified that "*everything* he was telling this jury was based on what other members or suspects of the gang told him." (RR 43 at 36-37). He brought no other independent evidence other than the information that he was told by the alleged co-conspirators. (RR 43 at 37).

Regarding Appellant's alleged statement of accused, Detective Reyes testified and acknowledged that Appellant "affirmatively and positively" requested

an attorney prior to being interviewed by any law enforcement officer. Reyes further acknowledges here that he was obligated by law to provide Appellant with an attorney.   (RR 43 at 47-48).   Detective Reyes Ramirez testified that Appellant refused to speak with Texas Rangers and with FBI before being interrogated by Ramirez.  Ramirez further testified that he, Ramirez, was aware of Appellant's refusal to speak without and unless an attorney was provided.  (RR 15 at 22); (RR 43 at 42).  At a pre-trial hearing regarding Appellant's statement, Ramirez testified on voir dire examination by defense counsel that the original recording of Appellant's statement was "placed in evidence." (RR 15 at 27) Detective Reyes Ramirez later testified that he "hasn't seen the original."   (RR 43 at 45). The original was never produced and counsel's request for the court to examine the alleged statement in camera was refused.  (RR 15 at 28-32).

Detective Reyes Ramirez admitted and testified that it was safe to say that as a result of his investigation, based on all of his interviews and the interviews of his officers, he had no evidence to bring

to the jury that Mr. Medrano had any knowledge of his own personal knowledge as to what was *going to happen.* (RR 43 at 100). Reyes further testified that "he had no evidence to bring to the jury that Mr. Medrano had any knowing and intentional knowledge of the crime that was about to be committed on January 5, 2003. (RR 43 at 103).

## SUMMARY OF THE ARGUMENT

The trial court reversibly erred and abused it's discretion in overruling Appellant's objection to the indictment for failure to allege the law of parties violating Appellant's Fifth Amendment right to notice of his accusation, Appellant's Sixth Amendment right to a jury determination of his case and Appellant's Fourteenth Amendment equal protection and due process rights. The trial court further reversibly erred and abused it's discretion in overruling Appellant's objection to the Charge of the Court due to the fatal variance between the indictment, since it did not allege party liability, and the application paragraphs in the Charge of the Court, where the Court charged the jury under party liability. It was the sole theory the

State presented in its case in chief and the only theory that the jury could have relied upon for Appellant's conviction.

Article 37.071 is unconstitutional as both written and applied to this Appellant in this case. The sentencing scheme contemplated by 37.071 allows the jury to consider the law of parties in answering special issue no. 2, thereby rendering 37.071 section 2(a)(2)(b)(2) inconsistent with the 8th and 14th Amendments to the United States Constitution. As such the evidence adduced, although insufficient to show that Appellant actually anticipated that a life would be taken, allowed the jury to answer special issue no. 2 in the affirmative.

The Court reversibly erred by allowing the State to adduce evidence from Detective Robert Alvarez in the form of "expert" testimony in the area of gang membership and gang identification. This testimony was cumulative, irrelevant and served only to condemn Appellant because of his gang affiliation in violation of Texas Rules of Evidence 404(b) and Texas Rules of

Evidence 403 as well as Appellant's 1st Amendment Rights of the Untied State Constitution.

Appellant also challenges the legal and factual sufficiency of the evidence with respect to specific intent required to prove a capital offense.

The trial court reversibly erred and abused it's discretion in overruling the numerous hearsay objections made by counsel and repeated motions for mistrial due in whole to the prosecutor's continuous questioning calling for hearsay testimony. This hearsay testimony repeatedly denied and compromised Appellant's 5th, 6th, and 14th Amendment rights to due process of law and the Equal Protection provisions of those Amendments as well as denied Appellant his right to effective assistance of counsel and right to a jury determination of his case.

### POINT OF ERROR NUMBER 1

The Evidence Is Legally and Factually Insufficient to Support Appellant's Conviction For Capital Murder.

### POINT OF ERROR NUMBER 2

The Evidence Is Insufficient To Support A Conviction For Capital Murder Since There Was No Evidence To Support A Nexus Between A Theft And The Murders.

34

Point of Error Number 3

The Evidence At Trial Was Legally Insufficient To Establish Appellant's Specific Intent To Kill.

*Appellant joins Points of Error Numbers One Through Three for purposes of argument only.*

ARGUMENT

Appellant asserts that the evidence adduced at trial was insufficient to convict Appellant of capital murder either as charged in the indictment or as charged in the jury charge. Appellant was indicted by a Hidalgo County Grand Jury for the offense of Capital Murder. V.T.C.A Penal Code, Sec. 19.03(a)(7). The State charged Appellant on or about the 5th day of January, 2003, intentionally and knowingly caused the deaths of Jimmy Almendarez, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo by shooting them with a firearm, and that those murders were committed during the same criminal transaction. (CR 002.) V.T.C.A Penal Code, Sec. 19.03(a)(7).

The evidence adduced at trial illustrated that on the day in question, Appellant and his wife planned to go out the night of January 4, 2003. (RR 43 at 60)

35

Appellant received a phone call indicating that "they" needed some weapons. Appellant tells "them" that they needed to go and pick them up because Appellant planned the evening with his wife. (RR 43 at 60). No one arrived to pick up the weapons by 8:00 p.m., so Appellant took the weapons to "Juanon's" house. (RR 43 at 60). Appellant spent the evening home with his wife watching movies, as planned. (RR 43 at 61).

The evidence at trial further confirmed that Appellant was neither present at the scene of any robbery, nor was he present when the deceased were killed. There was no evidence adduced at trial that Appellant actually participated in the robbery or attempted robbery or the actual shooting of the victims in this case. Investigator Ramiro Ruiz testifies that Appellant was not present at the scene of the murders. (RR 40 at 29-30). Detective David Valdez testified that Appellant was not at the crime scene, further conceding that the investigation revealed no evidence Appellant was at the crime scene. (RR 41 at 9-10). The evidence did not support that Appellant had any intent to kill the deceased. The record is silent regarding

Appellant's meeting of the minds with any of the shooters such that would make Appellant a party to the robbery or the murders.   In fact lead investigator Reyes Ramirez testifies:

Q.   So isn't it safe to say that as a result of your investigation, based on all these interviews that you and your officers conducted, you have no evidence to bring to this jury that Rodolfo Medrano had any knowledge of his own personal knowledge as to what was going to happen?

A.   That's correct, sir.

………

Q.   All right.  Would it be safe to say, not just to assume, but to actually say that whatever Mr. Medrano told you was as a result of what other people told him 20 days, between the 5th and the 25th of January, after the fact?

A.   Other people besides my law enforcement officers or—

Q.   Sure, What – what he talked about with reference to Mr. Bocanegra or Mr. Garza or whoever all these other individuals were, that was knowledge that he gained after the fact; is that correct?

Q.   It could be true, yes, sir.

(RR 43 at 100)

Later in his testimony, Investigator Reyes Ramirez testifies:

Q.   All right.  Do you have any evidence to bring to this jury that Mr. Medrano actually had knowing and intentional knowledge of the crime that was about to be committed on January 5th, 2003?

A.   No, sir.

37

(RR 43 at 103)

The Court should determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See* *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981).

A.   The Indictment

In order then for the State to obtain Appellant's conviction for capital murder under the Penal Code as indicted, it must prove that the Appellant "intentionally and knowingly caused the deaths of Jimmy Almendarez, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo by shooting them with a firearm, and that those murders were committed during the same criminal transaction." (CR at 002); V.T.C.A. Penal Code Section 19.03(a)(7)(a) Appellant is charged as a principal and is charged with the "result of conduct" crime of capital murder of multiple victims during the same criminal episode. (CR 002); V.T.C.A. Penal Code Section 19.03(a)(7)(a). The

evidence at trial clearly established that Appellant
did not participate in any intentional and knowing
murder period. Appellant did not participate in *any*
murder, either as a principal or as a party. The State
conceded that Appellant was not present at the scene
where the murders occurred. (RR 40 at 29-30); (RR 41 at
9-10); (RR 44 at 153.) There was no evidence adduced
to show any affirmative link between Appellant and the
actual murders themselves. The State did not attach any
modicum of intent on the part of Appellant specifically
to commit murder. Thus the evidence is insufficient to
support a conviction for capital murder as charged in
the indictment. (CR 002); V.T.C.A. Penal Code Section
19.03(a)(7)(a).

B.   No Nexus Claim

Instead, the State relied heavily, perhaps solely
on theories of party liability throughout the entire
trial to show that there was a robbery, although not
plead in the indictment as contemplated by either
Section 29.02, 29.03 or 19.03(a)(2), where Appellant
could have been charged with robbery, aggravated
robbery or capital murder occurring "during the course

39

of committing robbery." V.T.C.A. Penal Code, Sections 29.02, 29.03, 19.03(a)(2).

One commits robbery if, in the course of committing theft, committed with the intent to obtain or maintain control of property, one (a) intentionally, knowingly, or recklessly causes bodily injury to another; or (b) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. V.T.C.A. Penal Code 29.02. This Court has previously held that the term "in the course of committing" as used in the capital murder statute has the same meaning as the term used and defined in the robbery statute. *Riles v. State*, 595 S.W.2d 858 (Tex.Crim.App.1980); V.T.C.A. Penal Code section 29.01(1). Section 29.01(1) defines the term "in the course of committing theft" as "conduct which occurs in an attempt to commit, during the commission, or in immediate flight after the commission of theft." The State then, in order to obtain a conviction for capital murder as charged in the jury charge was bound to prove, beyond a reasonable doubt that Appellant

40

committed the murder "in the course of committing theft…." V.T.C.A Penal Code Sec. 29.01;(CR 2 at 578)

The State alleged throughout the trial and the trial court charged the jury that these murders occurred "during the course of committing theft of personal property from Jimmy Almendarez, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, and with intent to maintain said property, and that Appellant intentionally caused bodily injury, to wit: death by shooting." (CR 2 at 574-583). The State was then bound to show and prove that Appellant intentionally caused bodily injury, to wit: death by shooting with the intent to obtain control of the deceased's property. A killing and unrelated taking of property does not constitute capital murder under 19.03. The State must prove a nexus between the murder and the theft, *i.e.* that the murder occurred in order to facilitate the taking of the property. *O'pry v. State*, 642 S.W.2d 748 (Tex.Crim.App.1982); *Autry v. State*, 626 S.W.2d 758 (Tex.Crim.App.1982); *Cannon v. State*, 691 S.W.2d 664

(Tex.Crim.App.1985); *see also Cruz v. State*, 629 S.W.2d
852 (Tex.Crim.App.1982, rev. ref'd).

As part of its case in chief, the State introduced
a statement given by Appellant. (RR 43 at 55).   That
statement is inconsistent with the idea that the
murders were committed in order to facilitate *any*
theft.   Conversely, the statement and other evidence
adduced at trial supports that the murders in fact
occurred because the shooters, Tri-City Bombers,
accidentally discovered while at the residence of the
victims, that the victims were members of a rival gang,
the Texas Chicano Brotherhood. (RR 43 at 86; RR 44 at
129-130).   It was after this discovery, according to
information given to Appellant *after* the incident
occurred that the shooters decided to shoot and kill
the victims. (RR 43 at 86, 100-103).   No robbery
occurred.   There was no evidence that a "theft"
occurred.   Rather, even the investigators testified
that while the residence looked ransacked, things of
value such as cell phones, drugs, personal papers,
etc., were found at the scene. (RR 43 at 93).   There
was further testimony elicited that showed that there

42

was a "green light" between the Tri-City Bombers and
the Texas Chicano Brotherhood:  "a standing order to
engage." That is, they had the authority, without
asking permission from any particular gang member, "to
engage in whatever the situation required." It can be
anything from as simple as a fist-fight to stabbing to
murder, whatever the situation required for them to
"represent their gang." (RR 43 at 86); (RR 44 at 129-
130). Appellant asserts that under this Court's
previous holdings, this evidence bound the State. To
sustain the conviction, the State was required to
elicit evidence that appellant was in the course of
robbing or attempting to rob the victims when the
murders occurred. This is so because, if the robbery
was committed as an afterthought and unrelated to the
murders, the State did not prove the murders were
"committed in the course of theft." *See e.g.* *Alvarado*
*v. State*, 912 S.W.2d 199, 207 (Tex.Crim.App.1995) where
the evidence indicated that the victim was murdered
because the defendant and his co-defendants believed
the victim to be "related to Bin Laden," or that the
victim was "one of Bin Laden's people," making the

motive for the murder "hate" rather than to facilitate a theft. In order to convict Appellant then as charged in the charge of the Court, the State must have had to disprove beyond a reasonable doubt that the murders occurred because of anger, hate, the discovered rival gang status of the victims and the "green light." The State failed to do this.

Appellant respectfully requests that this Court sustain these points of error, reverse the judgment of conviction, and render a judgment of acquittal.

### POINT OF ERROR NUMBER 4

Appellant's Substantive Due Process Rights Under The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

### POINT OF ERROR NUMBER 5

Appellant's Equal Protection Rights Under The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under The Texas Penal Code Section 7.02(b).

### POINT OF ERROR NUMBER 6

Appellant's Rights Under The 8th Amendment To The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

POINT OF ERROR NUMBER 7

Appellant's Procedural Due Process Rights Under The United States Constitution Were Violated By The Application Of The Law Of Conspiracy Under Texas Penal Code Section 7.02(b).

*Appellant Joins Points Of Error Numbers 4 Through 7 For Purposes Of Argument Only.*

ARGUMENT

The charge of the Court at guilt/innocence reads in pertinent part as follows:

"If in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, then all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." (CR 2 at 576).

The Jury was further instructed:

"By the term 'conspiracy,' as used in these instructions, is meant an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them,

45

engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from the acts of the parties." (CR 2 at 576).

In the instant case, the State took great pains to educate the jury regarding the law of parties and criminal responsibility for conduct of another. (RR 31 at 13-20). From the individual voir dire sessions, the State begins to show its hand; that is to say that in order to convict Appellant, the State believed it important to instruct the potential jurors on the law of parties and how Chapter 7 of the Code of Criminal Procedure would allow a conviction for capital murder even where no intent on the part of Appellant need be proven. V.T.C.A. Penal Code 7.02(b). Note that the State admits to this potential juror as it did to other potential jurors that the State needed to prove that Appellant intentionally and knowingly caused the deaths of the victims in this case. However, in the same breath, the State admits it must rely on the law of parties and the law of criminal responsibility for conduct of another. (RR 31 at 12-19). The State needed

to rely on these theories because there was no affirmative link between Appellant and the murders otherwise.     There was no evidence, physical or otherwise, that Appellant was a shooter.   In fact, the investigators who testified admitted and conceded that Appellant was not at the scene. (RR 40 at 29-30); (RR 41 at 9-10);   (RR 44 at 153). So in order to convict, the State needed to show the connection between Appellant and the shooters.    This is why the State pounded the potential jurors and ultimately the jury throughout the trial that Appellant could and *should* be guilty of capital murder as a "co-conspirator."

Because section 7.02(b) of the Texas Penal Code effectively eliminates any need on behalf of the State to prove that Appellant had *any* intent to kill anyone, the State's burden of proof was effectively diluted. That is, Section 7.02(b) expressly allows one to be convicted as a party to a felony committed by a co-conspirator even though the accused party has no intent to commit that felony.   V.T.C.A. Penal Code, Section 7.02(b); *Snow v. State*, 721 S.W.2d 943, 949 (Tex.App.— Houston[1st Dist.] 1986, no pet.)(reasoning that the

47

absence of intent to kill is irrelevant to conviction under law of parties). In the instant case, the law of parties and law of conspiracy allowed the State to obtain Appellant's conviction for capital murder without a specific finding of intent to commit the murders, or intent to kill even as a party to the murder. V.T.C.A. Penal Code, Sections 7.02(b) 19.03(a); (CR 2 at 574-583). Instead, the State relentlessly encouraged the jury *should* convict because: (1) a conspiracy to commit robbery existed; (2) Appellant was a "party" to that conspiracy; and (3) being a "party" to the conspiracy by *aiding and abetting the conspiracy* to commit robbery, Appellant became a co-conspirator of the robbery; and (4) even though another co-conspirator committed the actual murders, (5) the murders were committed during the course of and in furtherance of that conspiracy to commit the robbery…. The State was allowed to rely on these *elements* for their conviction all without ever having to adduce any evidence of intent or prove that the Appellant intended for the murder to occur. *See*

*Ruiz v. State*, 579 S.W.2d 206, 209 (Tex.Crim.App. 1979).

To allow the State to convict a defendant of capital murder especially where the death penalty is sought, without in some way insuring that the jury finds that defendant had the *specific intent* to kill the victim himself or the specific intent to promote or assist the commission of the murder, ignores a basic and fundamental concept of criminal law: "in order to constitute a crime, the act or actus reus must be accompanied by a criminal mind or mens rea." *See Cook v. State*, 884 S.W.2d 485, 487 (Tex.Crim.App.1994); *Morissette v. v. United States*, 342 U.S. 246, 250-252, 72 S.Ct. 240, 243-244, 96 L.Ed.2d 88 (1952).

To hold that Appellant can be found guilty of capital murder as a conspirator surely cannot be supported by the facts in this case. By this count, the State here claims Appellant is a "co-conspirator" to the murder by first claiming his status as a "party" to the alleged underlying conspiracy to commit robbery and only *then* by merely "aiding and abetting" the conspiracy. Of course, there's *Ruiz v. State*, where

49

this Court held that Section 7.02(b) of the Texas Penal Code "eliminates any necessity on the part of the State to prove that Appellant had any intent to kill…." 579 S.W.2d at 206. In *Ruiz*, as in this case, the way the jury was ultimately charged included a conspiracy to commit robbery, an intentional killing committed by a co-conspirator in the course of committing the robbery, "which act should have been anticipated." Id.; (CR 2 at 578-579). This "should have been anticipated" language is suggestive of negligence as contemplated by "criminal negligence," listed in Section 6.02 of the Penal Code as the lowest degree of culpability. V.T.C.A Penal Code Section 6.02. The implication here is frightening because the Penal Code articulates that a person is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. V.T.C.A. Section 6.03(d). Surely this Court cannot sanction a capital murder conviction based on such a lesser degree of culpability.

Rather, capital murder is a "result of conduct" offense, and in the prosecution of such offense, "not only must an accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that the death result from that conduct." *Gardner v. State*, 730 S.W.2d 675 (Tex.Crim.App. 1987); *Leal v. State*, 800 S.W.2d 346 (Tex.App. - Corpus Cristi 1990, pet. ref'd). *See also* V.T.C.A. section 19.03 for the proposition that "capital murder" is defined in terms of one's intent to produce a specified result, not only must the accused be found to have engaged in an act that caused death, but he must have specifically intended that the death result from the conduct. *See e.g. Turner v. State*, 805 S.W.2d 423 (Tex.Crim.App.1991). Appellant asserts that "intentional" as contemplated by the capital murder statute should be limited to that "result of conduct" language.   If there is a conspiracy portion of an application paragraph such as in the instant case, the jury should still be required to find that the Appellant acted intentionally with regard to *his* conduct to determine whether Appellant intended to

commit the murders or that Appellant intended that the deaths occur.

This Court took this idea a step further in *English v. State*. This Court in *English*, 592 S.W.2d 949, 954-955 (Tex.Crim.App. 1980), cert denied, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980) pointed out that it did not authorize and charge the jury that it could convict English of capital murder of the victim, David Samsel, during the course of a conspiracy to commit robbery since a murder committed during the course of a conspiracy to commit robbery is not designated as a capital murder under V.T.C.A. Penal Code, Section 19.03; only intentional murders committed during the course of a robbery or an attempted robbery are so designated. English at 952.

Rather, the Court's charge in *English* required the jury to find English conspired with McGill to rob Samsel and then "did carry out or attempt to carry out" the conspiracy by robbing or attempting to rob Samsel, and that during the course of such robbery, English *or* McGill intentionally killed Samsel. The Court's charge did not authorize the jury to convict appellant if it

found that the murder was committed during the course of a conspiracy to rob Samsel. The jury was required to find that appellant was a party *to the offense of capital murder* as designated by Section 19.03(a)(2). V.T.C.A. Penal Code Section 19.02(a)(2).

The Court in <u>English</u> charged the jury as follows:

> Before you would be warranted in convicting the defendant Sammie Norman English, of capital murder, you must find from the evidence beyond a reasonable doubt not only that Sammie Norman English, with either Kyle McGill and/or Aaron Earl Powell, on the occasion in question were engaged in the commission of the felony offense of robbery or attempted robbery of David Samsel as defined in this charge, but also that during the commission of the robbery, if any, Sammie Norman English shot David Samsel with the intention of killing him. Unless you find from the evidence beyond a reasonable doubt that Sammie Norman English on the occasion in question specifically intended to kill the

said David Samsel when he shot him, if he did, and unless you find from the evidence beyond a reasonable doubt that said act, if any, was committed in the course of committing robbery, you cannot convict Sammie Norman English of the offense of capital murder.  If you have such a reasonable doubt, you will acquit Sammie Norman English.

*English*, 592 S.W.2d  954-955

Perhaps by recognizing the "commendable act of caution" taken by the trial court in *English* regarding this cautionary and/or restrictive instruction, this Court realized the real need to *insure* that juries won't be confused by the conspiracy language trial courts use in applying the law to the facts.  Id. at 954. Take the facts in the instant case for comparison, and note that in *English*, Sammie Norman English himself participated in the actual robbery and the actual murder, leaving the only question then............who was the actual shooter?  Conversely, the facts here established that Appellant was nowhere near the robbery, there was no evidence that Appellant was a shooter.  There was no

54

evidence affirmatively linking Appellant to the murders other than his alleged status as a party to the conspiracy to commit robbery which the State alleged qualified him as a co-conspirator to the robbery. Accordingly, the State relied on 7.02(b) to convict Appellant with the "should have anticipated language." Surely this Court would require, at the very least, a cautionary or restrictive instruction in *this* case, as in *English*, informing the jury that they cannot convict the defendant of capital murder unless they find beyond a reasonable doubt, under each theory contained in the charge, that Appellant had the specific intent to commit the murders or that death result. *See English v. State*, 592 S.W.2d 949, 954-955 (Tex.Crim.App. 1980), cert denied, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980).

Appellant asserts that even though the Judgment and sentence in *English* was affirmed, this Court's cautionary or restrictive instruction is revealing in that this Court realized then and hopefully still recognizes the infirmity regarding a capital murder conviction supported by Texas Penal Code Section

7.02(b).  The affirmance in *English* seems to have been
conditioned on the fact that the trial court took that
extra  "commendable"  step  of  cautioning  and/or
restricting the jury so as "not to confuse them with
the conspiracy language." *English* at 955.

Appellant  respectfully  suggests  that  while  this
Court  has  visited  this  issue  in  other  cases,  this
particular  case  provides  an  exceptional  set  of  facts
that warrants a re-evaluation of *Ruiz v. State* and that
line  of  cases  where  a  defendant  is  found  guilty  of
capital  murder  under  this  very  theory  of  culpability.
*See  e.g.  Ruiz  v.  State*,  579  S.W.2d  206
(Tex.Crim.App.1979); *Livingston v. State*,  542  S.W.2d
655  (Tex.Crim.App.1976); *Wilder  v.  State*,  583  S.W.2d
349 (Tex.Crim.App.1979).

Although  the  Court  in  English  doesn't  explicitly
hold that a cautionary or restrictive instruction is
necessary  in  cases  such  as  this  one  where  the  State
relies  on  a  7.02(b)  theory  for  a  capital  murder
conviction,  Appellant  believes  that  the  *English*
language  embodies  what  might  and  perhaps  should  be
considered a "limitation" on *Ruiz* and those cases that

stand for capital murder convictions based on a 7.02(b) theory. *Ruiz v. State*, 579 S.W.2d 206 (Tex.Crim.App.1979). After all, will these holdings stand for *every* case where, although having no intent to commit murder or that deaths occur, defendants are merely parties to conspiracies to commit underlying offenses should be not only found guilty of capital murder but sentenced to death?

Realizing that to date *Enmund v. Florida* and *Tison v. Arizona* have not been held to apply to the guilt/innocence stages of capital murder cases, their reasoning and holdings are very instructive. For instance, those Courts concerned themselves with the equity of a death sentence as it relates to not only the culpable mental state of a defendant, but also each respective defendant's "degree of culpability." *See Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Reasoning *English*, *Enmund* and *Tison* together, Appellant asserts that the constitutional infirmity of Texas Penal Code Section 7.02(b) becomes apparent.

Allowing the State to rely on Section 7.02(b) of the Texas Penal Code, here amounted to a constructive amendment of the indictment and the elements required of the State to prove, thereby violating Appellant's 5th, 6th, and 14th Amendment rights under the United States Constitution. Section 7.02(b) serves as a dilution of the State's burden of proof. The cruel and unusual result of this capital murder conviction based on the "should have anticipated" language, a negligence standard, is inequitable in the eyes of the *English*, *Enmund*, and *Tison* Courts and further serves to violate Appellant's rights under the 8th Amendment to the United States Constitution. *United States Constitution, Amendment 5, 6, 8 and 14.* As such, Appellant's rights under the United States Constitution have been desecrated.

Appellant has satisfied the test for reversible error pursuant to Texas Rule of Appellate Procedure 44.2(a) for constitutional due process and due course of law error in allowing the conviction for capital murder based on a culpable mental state less than that required by statute and further satisfied the "some

harm" standard of *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) *and Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

Appellant respectfully requests that the Court reverse his conviction and render a judgment of acquittal. Alternatively, Appellant respectfully requests that this Court reverse his conviction and remand for a new trial in order to afford Appellant a fair trial with an appropriate jury charge.

### POINT OF ERROR NUMBER 8

Appellant's 5th Amendment Right To Due Process Notice Of His Accusation Was Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties.

### POINT OF ERROR NUMBER 9

Appellant's 14th Amendment Equal Protection And Due Process Rights Were Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties.

### Point Of Error Number 10

Appellant's 6th Amendment Right To A Jury Determination Of His Case Was Violated Because While The Indictment Failed To Plead Party/Co-Conspirator Liability, The Jury Was Required To Find Such Beyond A Reasonable Doubt Such That The Application Of The Death Penalty Scheme To This Appellant Was Unconstitutional.

## Point of Error Number 11

Appellant's Right To Notice Was Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties Violating Article I, Section 10 Of The Texas Constitution.

## Point Of Error Number 12

Appellant's Right To Jury Unanimity Was Denied By The Trial Court Overruling Appellant's Objection To The Indictment For Failing To Plead The Law Of Parties Violating Article V, Section 13 of the Texas Constitution and Article 36.29 of the Texas Code of Criminal Procedure.

*Appellant hereby joins Points of Error 8, through 12 for argument only.*

## ARGUMENT

A Hidalgo County grand jury indicted Appellant as a principal for the offense of Capital Murder in a one-paragraph indictment under the authority of Section 19.03 of the Texas Penal Code. (CR at 002); V.T.C.A. Penal Code Section 19.03(a) (7) (a).

(a) A person commits an offense if the person commits murder as defined by section 19.02(b)(1) and:

...

(7) *the person murders more than one person:*

a. *during the same criminal transaction;*

60

*V.T.C.A. Penal Code Section 19.03*

The grand jury saw fit to indict Appellant as a principal solely under section 19.03(a)(7)(a) by charging that Appellant "intentionally and knowingly caused the deaths of Jimmy Almendarez, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo during the same criminal transaction." (CR at 002); *V.T.C.A. Penal Code Section 19.03*

No amendments were requested by the State to include the Chapter 7 Law of Parties language in the indictment. At no time did Appellant receive notice from the face of the indictment that the State would seek Appellant's conviction based on the law of parties or the law of conspiracy.

Everything should be stated in an indictment, which is necessary to be proved. *V.A.C.C.P. Art. 21.03; See Also McCravy v. State*, 642 S.W.2d 450 (Tex.Crim.App.1980) where this court held that "An indictment or information must by direct and positive averments allege all the constituent elements of the offense sought to be charged. Nothing can be left to

61

inference or intendment.... All elements constituting an offense must be sufficiently charged so as to inform, without intendment, the presumptively innocent accused of the charges against him." *Id.* at 455; *See also Livingston v. State*, 739 S.W.2d 311 (Tex.Crim.App.1987). "Elements of Offense" means:

>    (a) the forbidden conduct;
>
>    (b) the required culpability;
>
>    (c) any required result; and
>
>    (d) the negation of any exception to the offense.
>
>    *V.T.C.A. Penal Code Section 1.07(a)(22)*

Section 7.01 of the Texas Penal Code addresses criminal responsibility of a person. Under section 7.01(a), a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Under section 7.01(b), each party to an offense may be charged with the commission of the offense. Then, under section 7.01(c), all traditional distinctions between accomplices and principals are abolished and "...each

party to an offense may be charged and convicted without alleging that he acted as a principle or accomplice." V.T.C.A. Penal Code Section 7.01

To date, the Court of Criminal Appeals has held that if the evidence supports a charge on the law of parties, the court may submit a charge on parties even though there is no such allegation in the indictment. *See e.g. Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Crim.App.1978); *see also Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim.App.2005); see also *Marable v. State*, 85 S.W.3d 287 (Tex.Crim.App.2002). Appellant asserts that: (1) *Pitts* was incorrectly decided; (2) *Pitts* and section 7.01(c) violate the right to an indictment and the right to full and fair notice of the offense charged; (3) following *Pitts* and Section 7.01 violates the 5th, 6th, and 14th Amendments to the Constitution of the United States and Article I, Section 10 of the Texas Constitution; and (4) allowing the State to conduct voir dire, adduce and rely on evidence of the law of parties (where there has been no party liability alleged), constitutes a constructive amendment of the indictment. Further, this creates a

fatal variance by enlarging the indictment and adding *elements* not only needing to be proven by the State but also needing to be found beyond a reasonable doubt by the jury. This undermines the requirement of jury unanimity mandated by Article V, Section 13 of the Texas Constitution and Article 36.29 of the Texas Code of Criminal Procedure.

Whether the State seeks a conviction under the law of parties or Section 7.02(b), the law of conspiracy, doesn't matter. What ends up happening is the State must then prove those additional Chapter 7 elements beyond a reasonable doubt, the elements of party/conspiracy liability. What's more, if the theory of party liability and/or conspiracy is raised by the evidence, then the trial court is not only required to charge the jury on the law of parties but must also require the jury to apply the facts of the case to the law of parties. The jury is then charged with finding these additional Chapter 7 elements beyond a reasonable doubt before the accused can be found guilty under either theory. *See Planter v. State,* 9 S.W.3d 156

64

*(Tex.Crim.App. 1999)* where Justice Womack recognized the shortcomings of the Law of Parties….

> *I am doubtful of the rule that the law of parties is available without any allegation in the indictment of conduct that would make a party.*

> *Planter* at 162 (Womack, J. dissenting)

Appellant agrees with Justice Womack and hereby stresses that the continuing ability of the State to rely on a theory of party liability when the indictment does not allege a theory of party liability is ripe for review. The 5th Amendment right to due process of law requires such notice as provided in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311(1999), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and their progeny. Appellant asserts then that the 5th and 6th Amendments require notice in the charging instrument if the State intends to rely upon the same to establish guilt and seek punishment therefore. *See also Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed2d 556 (2002) for an analysis of the 6th Amendment right to a jury trial

65

in capital prosecutions as it relates to this issue. There, the United States Supreme Court stated that the right to a jury trial requires the jury to find all essential elements of proof of the crime beyond a reasonable doubt before a judgment of guilt can be had or a sentence imposed. *See also Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). There, the Supreme Court of the United States held that the same standard under *Apprendi* for review of 5th Amendment claims applies to analysis of 6th Amendment claims under *Ring v. Arizona* in this context.

Therefore, Appellant asserts that this failure to give notice of an actual or implied element of a crime or their functional equivalents in law or fact in this case, created a violation of Constitutional rights requiring at least a new trial and that the sentence of death be set-aside.

The evidence in the instant case illustrates that the only possible scenario available to the State for conviction is through party liability. There was absolutely no evidence that Appellant was at the scene.

In fact, several of the State's own witnesses were quick to admit and the State had no choice but to concede that Appellant was nowhere near the crime scene at the time of the killings. (RR 41 at 6-41); (RR 41 at 9-10); (RR 44 at 153-155).   At best, the statement given by Appellant shows that he lent some weapons to friends and that he may have had an idea there would be a robbery.   However, the lead investigator conceded that Appellant had neither knowledge nor any intent to commit robbery or kill either before during or after the killings took place. (RR 43 at 99-100, 103). The State had no choice then but to proceed under a theory of party liability.   Realizing this, from voir dire through closing remarks, the State pounded into the jury box that Appellant was responsible for the killings because he participated in the conspiracy to commit robbery as a party and that he knew, should have known, or could have reasonably foreseen that a murder would occur during the commission of the robbery. The State remembered to emphasize this during their closing.(RR 31 at 13-20; RR 46 at 48).

In Texas, capital murder is a specific intent crime. That is, capital murder is a crime that can only be committed *intentionally* and a capital murder committed under the lesser culpable mental state of knowing is actually no capital murder at all. Intentionally is defined in the Texas Penal Code as:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> V.T.C.A. Penal Code *Section 6.03(a)*.

Under Texas Law then, the crime of capital murder requires that the State prove a specific intent to kill the individual.  V.T.C.A. Sections 19.02 & 19.03.  An intentional killing occurs when the person's conscious desire or objective is to cause one's death.  V.T.C.A. Penal Code 6.03(a).  In other words, the defendant must have formulated a specific intent to cause the victim's death, rather than the mere intent to engage in conduct that caused the victim's death. *Gardner v. State*, 730 S.W.2d 675 (Tex.Crim.App. 1987); *Leal v. State*, 800

S.W.2d 346 (Tex.App. - Corpus Cristi 1990, pet. ref'd).
*See also* V.T.C.A. Penal Code Section 19.03 for the
proposition that "capital murder" is defined in terms
of one's intent to produce a specified result, not only
must an accused be found to have engaged in an act that
caused death, but he must have specifically intended
that the death result from the conduct. *See e.g.*
*Turner v. State*, 805 S.W.2d 423 (Tex.Crim.App.1991).

Conversely, under the conspirator form of criminal
responsibility, the element of intentionally committing
capital murder is altogether dispensed with. What
happens here then is one becomes criminally responsible
by way of "strict liability" for the greater crime of
capital murder simply because he may have intended to
commit a lesser crime, like that contemplated in the
instant case - conspiracy to commit robbery, and you
knew or *should have known* that the greater crime could
be committed by that other person. You then become
criminally responsible for that other person's actions.
What's more, the conspirator form of criminal
responsibility also dispenses with the need for the
State to prove any element of "knowing" in order to

secure a conviction for the capital murder in this
scenario. Knowingly is defined in the Texas Penal Code
as:

> A person acts knowingly, or with knowledge,
> with respect to the nature of his conduct or
> to circumstances surrounding his conduct when
> he is aware of the nature of his conduct or
> that circumstances exist. A person acts
> knowingly, or with knowledge, with respect to
> a result of his conduct when he is aware that
> his conduct is reasonably certain to cause the
> result.

> *V.T.C.A Penal Code Section 6.03(b).*

Comparing these definitions with *knowledge* as
contemplated by the Chapter 7 conspirator form of
responsibility, you need not act with intent nor are
you required to act with any knowledge of the resulting
crime. Rather this lesser standard will allow you to
be convicted of capital murder and be sentenced to
death just as if you in fact had intended to commit the
murders in the first place. This is exactly the
scenario presented by the facts in the instant case.

This theory of prosecution should have been alleged in the indictment giving Appellant the requisite notice he was constitutionally entitled to. To not require the State to allege the most important element of the offense, the required culpability, in the State's case in chief is to disregard/deny Appellant his constitutionally mandated safeguards, guaranteed him, and all of us for that matter, by the 5th, 6th, and 14th Amendments of the United States Constitution. Only then can an accused's rights to due process of law and equal protection of the law be preserved.

Nowhere in the indictment is Appellant charged with capital murder as contemplated by section 19.03(a)(2) where the capital murder is alleged as a killing during the course of committing…robbery. However the State relied upon a theory that Appellant was a party to a *conspiracy* to commit robbery and that in carrying out that conspiracy to commit robbery, six individuals were murdered. Further, while Appellant did not participate in the actual robbery, the State alleged Appellant knew or "should have known" that by participating in the *conspiracy* to commit robbery by

71

aiding and abetting, these deaths could occur. The State then clearly added *elements,* at least in the form of a different "required culpability," of the crime and/or their functional equivalents. The State now would be required to prove, and the jury in this case was required to find these *elements* beyond a reasonable doubt. *See* V.T.C.A. Penal Code Section 1.07(a) (22). Both the United States and the Texas Constitutions require that a jury must be required to find all essential elements of a crime beyond a reasonable doubt in order to render a guilty verdict. *United States v. Ramirez*, ---, F.3d --- (#99-50768, 5th Cir., August 1, 2000); *United States v. Mashack*, 235 F.3d 556 (5th Cir. 2000). *See also* In Re Winship, 397 U.S. 358,90 S.Ct. 1068 (1970). These same constitutions and laws also require that all "*elements*" of an offense or their "functional equivalents," which are necessary preconditions and contingencies to the imposition of the death penalty, must be found by a jury beyond a reasonable doubt as well. *See e.g. Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) *and Ring v. Arizona*, 536 U.S. 584, 122 S.Ct.

2428, 153 L.Ed2d 556 (2002).   Absent said proof and absent said finding, Appellant cannot be convicted of capital murder.   *Ring v. Arizona*, supra.   In *Ring*, the Supreme Court held that any and all facts which are a necessary preconditions to the imposition of the death penalty must be found by the jury.   All such facts, following *Apprendi*, must also therefore be alleged in the indictment to support the imposition of the death penalty and not just those facts establishing guilt. This must be so because a death sentence is different from other non-capital crimes.   All such punishment facts must be proved beyond a reasonable doubt by the State upon whom that burden solely rests because a finding upon the same is a contingency and necessary pre-condition to the imposition of death which makes them elements of the crime of capital murder.   *Ring*, supra.   *See also Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

Appellant respectfully requests that this Court sustain these points of error and reverse the conviction in this case and render a judgment of acquittal.

73

### Point Of Error Number 13

The Court Erred In Allowing Testimony From Detective Robert Alvarez Regarding Criminal Street Gangs In Texas.

### Point Of Error Number 14

The Court Erred In Allowing Testimony During The Guilt Innocence Phase Of The Trial From Detective Robert Alvarez Regarding Appellant's Membership In The Tri-City Bombers Since This Evidence Was Cumulative Of Evidence Already Admitted, violating Appellant's 5th, 6th, and 14th Amendment rights under the U.S. Constitution.

### Point Of Error Number 15

The Court Erred In Allowing Testimony From Detective Robert Alvarez Regarding Appellant's Membership In The Tri-City Bombers Violating Appellant's First Amendment Rights.

### POINT OF ERROR NUMBER 16

The Trial Court Reversibly Erred By Admitting Evidence Of Appellant's Gang Membership At The Guilt/Innocence Stage of Trial, violating Appellant's 5th, 6th and 14th Amendments under the United States Constitution.

### POINT OF ERROR NUMBER 17

The Trial Court Reversibly Erred By Admitting Evidence At The Guilt/Innocence Stage of Trial Of Appellant's Knowledge Of An Unrelated Murder, The Donna Killings.

### POINT OF ERROR NUMBER 18

The Trial Court Reversibly Erred By Admitting Hearsay testimony of Robert Alvarez in violation of Appellant's 6th Amendment right to confrontation and cross-examination.

POINT OF ERROR NUMBER 19

The Trial Court Reversibly Erred By Admitting Hearsay
Testimony Of Robert Alvarez.

*Appellant joins Points of Error Numbers 13 through 19
for purposes of argument only.*

ARGUMENT

Detective Robert Alvarez testified for the State
as an expert in the area of gangs and gang membership.
(RR 44 at 19 – 177). By the time Robert Alvarez
testified, the jury had already heard from Reyes
Ramirez, the lead investigator in this case. (RR 43 at
19-115). Reyes Ramirez' testimony and Appellant's
statement which Reyes Ramirez sponsored already
established that Appellant was a member of the Tri-City
Bombers. (RR 43 at 55-89). Through Detective Robert
Alvarez, the State adduced evidence to show that
Appellant was not only a member of the Tri-City
Bombers, but further that the Tri-City Bombers are a
criminal street gang as contemplated by section 71 of
the Penal Code. (RR 44 at 63-64); V.T.C.A. Penal Code
Section 71. (RR 44 at 63-65). The State elicited
testimony from Alvarez about the Tri-City Bomber's
history and their "criminal enterprise". (RR 4 at 63-

75

70).   The  defense  made  several  objections  to  the
introduction  of  this  testimony  charging,  inter  alia,
that  this  testimony  was  irrelevant  since  there  was
already  a  statement  in  evidence  by  Appellant  admitting
he  was  a  member  of  the  Tri-City  Bombers;  that  this
evidence  was  irrelevant  since  no  mention  of  gangs  or
violation  of  the  law  alleging  Appellant's  membership  in
criminal  street  gangs  was  made  in  the  indictment.  (RR
43  at  55-89);  (RR  44  at  60,  62,  72,  81-83-87).
Detective  Alvarez  was  allowed  to  testify  regarding
hearsay  statements  thereby  violating  Appellant's  rights
to  confrontation  and  cross-examination.  (RR  44  at  51)

In  determining  the  admissibility  of  extraneous
offenses,  the  court  must  look  to  the  "evidence  that  the
State  has  to  offer  in  proof  of  the  essential  elements
of  its  case."  _Albrecht v. State_,  486  S.W.2d  97,  101.
(Tex.Crim.App.  1972).  When  the  element  the  State  bears
the  burden  of  proof  on  can  be  "inferred  from  the  act
itself,"  the  State  may  not  use  extraneous  offenses  as
circumstantial  evidence  of  that  element  in  their  case
in  chief.   In  the  instant  case,  the  State  saw  to  it
that  the  jury  was  educated  on  Appellant's  status  as  a

member of the Tri-City Bombers, and that *that* membership was in fact a membership in a "criminal street gang." (RR 44 at 63-64); (RR 44 at 89-90). This "gang expert" went on to testify further regarding the criminal enterprise which is the Tri-City Bombers. (RR 4 at 63-70). What's more, the State introduced evidence that as a member of the Tri-City Bombers, Appellant had knowledge of the "Donna killings," a separate murder with which Appellant and other members of the Tri-City Bombers were charged.  These Donna killings involved a "hit gone bad."  According to Appellant's recorded statement, another member of the Tri-City Bombers ordered a hit on a witness, which "went bad."  This ordered hit ultimately led to the murder of four young women, which gained much media attention. (RR 43 at 86-89).

The facts regarding the Donna murders, apparently committed by the same gang that Appellant was an admitted member of together with the inherently egregious nature of the murders in the instant case, were both outside the presence of Appellant. Detective Alvarez admits that Appellant is on trial *here*, not the

Tri-City Bombers, not the Donna shooters, and not any of the other members of the gang to which he refers to during his testimony. (RR 44 at 146). The overall effect of the testimony regarding the Tri-City's Bombers and their "criminal street gang nature" together with Appellant's statement, admitted over objection, suggested knowledge of the Donna Killings, albeit after the fact and albeit Appellant had nothing to do with Donna Killings save for being a member of the same gang. This is precisely the reason the general rule against the introduction of extraneous offenses was created. *See* *Rodriguez v. State*, 486 S.W.2d 355 (Tex.Crim.App. 1972); *Ford v. State*, 484 S.W.2d 727 (Tex.Crim.App. 1972); *Jones v. State*, 481 S.W.2d 900 (Tex.Crim.App. 1972); *Jones v. State*, 479 S.W.2d 307 (Tex.Crim.App. 1972); *Powell v. State*, 478 S.W.2d 95 (Tex.Crim.App. 1972); *Albrecht v. State*, supra.

In determining whether the trial court erred in admitting evidence, the standard of review is abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App.2005)(*citing Mozon v. State*, 991 S.W.2d

841, 846-847 (Tex.Crim.App.1999).  A trial court abuses its discretion when its decision is so clearly wrong so as to lie outside that zone within which reasonable persons might disagree.  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.1991).

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character and/or to show that *that* person acted in conformity with that character.  *See* Texas Rule of Evidence 404(b).

"Congress shall make no law respecting establishment of religion or prohibiting the free exercise thereof or abridging the freedom of speech or the press the right of the people to peaceably assemble."  The First Amendment protects an individual's right to join groups and associate with others holding similar beliefs.  *See e.g. Dawson v. Delaware*, 503 U.S. 159, 161 (1992); *Mason v. State*, 905 S.W.2d 570, 577 (Tex.Crim.App.1995).

While Appellant is not suggesting there is a "per se" barrier to the admission of this evidence, Appellant does aver that evidence adduced at the

79

guilt/innocence phase regarding Appellant's membership in the Tri-City Bombers was irrelevant to any issue regarding guilt or innocence. Assuming arguendo that this evidence had even a modicum of relevance, its relevance, if any, was certainly more prejudicial than probative and in fact served only to inflame the jury. Detective Alvarez testifying that the Tri-City Bombers are a criminal organization which "regularly associates to commit criminal activities" serves absolutely no purpose here other than to inflame the minds of the jury. (RR 44 at 19 - 20; RR 44 at 63-64). The only reason this evidence was offered at the guilt/innocence stage of the trial must have been to show the criminal character of the gang itself and Appellant's conformity therewith. This "guilt by association" implication must have served no other purpose. (RR 44 at 134)

The State took great pains to elicit specific testimony from Detective Alvarez to show the jury that the Tri-City Bombers satisfied the definition of "criminal street gangs" as contemplated by the Texas Penal Code. V.T.C.A. Penal Code Section 71.01; (RR 44 at 63-64). For instance, Detective Alvarez testified

that the Tri-City Bombers have three or more members;
that they have an identifiable sign; that they have an
identifiable symbol, which is commonly used for tattoos
and specific to their gang.   (RR 44 at 64-65).

Detective Alvarez went even further and attempted
to educate the jury about the history of the Tri-City
Bombers and how they went from a small football team in
Lopezville, Texas to a "turf gang." They eventually
became a criminal street gang.  (RR 44 at 65).   This
led to testimony that gang members get arrested; gang
members go to prison; gang members are recruited in
prison and eventually become associated with the Texas
Syndicate, a "very strong prison gang."  (RR 44 at 65-
66) Detective Alvarez further testified that one of the
qualifying characteristics of a criminal street gang is
that the members continuously or regularly associate
with the commission of criminal activities.  (RR 44 at
73).   Detective Alvarez went still further and
testified that this is the case with the Tri-City
Bombers and that the criminal activity commonly engaged
in by the Tri-City Bombers ranges from all types of

crimes "from burglaries to robberies to murder."  (RR
44 at 73).

The jury was presented not only with evidence that
Appellant was a member of the Tri-City Bombers, but
also the Tri-City Bombers as a "criminal street gang."
Detective Robert Alvarez' entire testimony then did not
serve to assist the trier of fact to understand any
technical evidence, scientific evidence, complicated
evidence or any other type of evidence for that matter.
That is, Detective Robert Alvarez' testimony served no
purpose other than to inflame the jury with evidence
that the Tri-City Bombers are a criminal street gang;
that as a criminal street gang, the Tri-City Bombers
regularly engage in crimes ranging from burglaries to
robberies to murders; that since Appellant is a member
of the Tri-City Bombers, Appellant must also regularly
engage in crimes ranging from burglaries to robberies
to murders.  Investigator Robert Alvarez testified to
just that when asked:

> Q. Do you have a predisposition in your mind
>    thata if you're a member of a gang, you're
>    automatically a criminal?
> A. By definition. Is that---
>
> Q. Yes.  So if you're a gang member, you're

automatically a criminal?

A. By definition of a criminal street gang, If you are a member of it, you participate in crimes.

(RR 44 at 134)

Again this evidence must have been presented for no other reason than to show the criminal nature of the Tri-City Bombers and Appellant's conformity therewith.

There can be no doubt but that the State was the source of this complained of evidence. The nature of the error must be determined to be great. By this count, throughout the trial, the Sate attempted to convince the jury that the Tri-City Bombers are criminals, the Appellant is a member of the Tri-City Bombers, and that since Appellant is a member of the Tri-City Bombers, Appellant is a criminal.

It cannot be contradicted that the State emphasized the criminal nature of the Tri-City Bombers with great vigor. For instance, in the prosecution's closing statement, the State pointed out their burden was to prove that Appellant "should have anticipated." Here, the State emphasized that in fact Appellant did anticipate because (1) "he didn't go out there; and (2) *He is a gang member*." The fact that Appellant was a

83

sergeant in the Tri-City Bombers, knew and affiliated with other gang members whose purpose of organization was to "commit crimes" illustrates the State's efforts to emphasize this complained of evidence. (RR 46 at 25-26.)  The State further reiterated Appellant's gang affiliation during the State's closing by replaying that portion of Appellant's statement where Appellant admits to being a member of the Tri-City Bombers for seven years. (RR 46 at 48-51). The State demands in their closing that "Gangs like these have to be brought to justice." "They serve no good in our community. Even though you were not there Mr. Medrano, you are just as guilty if not guiltier." (RR 46 at 53). The jury had no choice but to place great weight on the facts surrounding the Tri-City Bombers and the effect of Appellant's affiliation is evident in the verdict. Admitting this evidence of Appellant's gang affiliations and the "criminal" nature of the Tri-City Bombers made a great contribution to the guilty verdict and punishment and was therefore harmful error in this case.

Appellant respectfully requests this Court reverse

Appellant's conviction and render a judgment of acquittal. Alternatively, Appellant respectfully requests this Court reverse Appellant's convict and remand this case for a new trial in order to afford Appellant a fair trial.

POINT OF ERROR NUMBER 20

The Court Erred In Qualifying Detective Robert Alvarez and Allowing his Testimony as a "Gang Expert."

The State offered Detective Robert Alvarez as an expert witness in the area of gang membership and gang identification. (RR 44 at 18-51) Appellant first asserts that this testimony should have been excluded because the State did not timely provide the defense with the vita and/or qualifications of this witness as an expert in the area of gang membership and gang identification. (RR 44 at 30) By this count, several requests by defense counsel were made for the State to provide curriculum vitas and/or qualifications for any witness the State intended to present as an expert so as to prepare for cross-examination and identify witnesses whose testimony could conceivably require rebuttal. (RR 4 at 8); (RR 8 at 4-5) The Court ruled that vitas and/or qualifications of expert witnesses

that the State intended to use as expert witnesses were to be provided no later than thirty (30) days prior to trial.   The record reflects that in fact Detective Alvarez' vita was not provided to the defense until after trial began.   (RR 44 at 30).   Consequently, Appellant asserts that he was not afforded proper notice of this witness for purposes of being used as an expert.  Texas Rules of Evidence 702.

Appellant respectfully requests this Court reverse Appellant's conviction and render a judgment of acquittal.   Alternatively, Appellant respectfully requests this Court reverse Appellant's convict and remand this case for a new trial in order to afford Appellant a fair trial.

### Point Of Error Number 21

The Court Reversibly Erred In Admitting State's Exhibit 101 Violating Defendant's 6th And 14th Amendments Right To Confront And Cross Examine.

### Point Of Error Number 22

The Court Erred In Admitting State's Exhibit 101 As Hearsay.

### Point Of Error Number 23

The Trial Court Erred In Allowing Testimony Over Hearsay Objections Regarding Ramiro Ruiz' Testimony.

Point Of Error Number 24

The Trial Court Reversibly Erred In Allowing Hearsay Testimony Of Ramiro Ruiz' Violating Defendant's 6th And 14th Amendments Right To Confront And Cross Examine.

*Appellant hereby joins Points of Error Numbers 21 through 24 for purposes of argument only.*

ARGUMENT

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. The Sixth Amendment right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex.Crim.App.1991). Appellant asserts that the admission of State's Exhibit 101 violated Appellant's Confrontation-Clause rights. *Lilly v. Virginia*, 527 U.S. 116, 136-137, 119 S.Ct. 1900 (1999).

87

The substance of Investigator Ramiro Ruiz' testimony in this case was in fact out-of-court statements by unavailable declarants. (RR 40 at 19-22) In fact, these "out-of-court" declarants were co-defendants. (RR 40 at 19-29)  These were people who were arrested in connection with this investigation, which led to the arrest of Appellant.  These statements were testimonial in nature and therefore their admission violated Appellants 6th Amendment right to confrontation and cross-examination.  That is, this testimony should have been barred by the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct.1354, 1374, 158 L.Ed.2d 177 (2004).  In all criminal prosecutions, the accused has a right, guaranteed by the 6th and 14th Amendments to the United States Constitution, "to be confronted with witnesses against him."  U.S. Const. Amend. VI; *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

In *Crawford*, the Supreme Court held that testimonial hearsay evidence is inadmissible under the Confrontation Clause unless the declarant is

unavailable and the defendant had an opportunity to cross-examine the declarant. *Crawford*, 124 S.Ct. 1374. The *Crawford* Court gave us several non-exclusive examples, including (1) ex-parte in court testimony or its functional equivalent; (2) extra-judicial statements contained in formalized testimonial materials, such as confessions; (3) statements that were made under circumstances which would lead an objective witness to believe the statement would be available for use at a later trial. *Id*. at 1364. Appellant asserts that the statements made by the co-defendants in the instant case were in fact testimonial in nature. *See e.g. Brooks v. State*, 132 S.W.3d 702 (Tex.App. – Dallas 2004, pet. filed), where the Dallas Court of Appeals held that the custodial statement of a co-defendant given to police officers after arrest is testimonial.

In a colloquy between the State and Investigator Ramiro Ruiz, State's Exhibit 101 was compiled. (RR 40 at 20-29). He testified regarding the names of co-defendants, their approximate arrest dates, whether they gave a statement and what information they

provided in that statement. (RR 40 at 20-29). For instance, Ramiro Ruiz testified Marcial Bocanegra was arrested in connection with this case and that he gave a statement. (RR 40 at 20). Next Ramiro Ruiz' testimony reveals that Humberto Garza, Rodolfo Medrano, Juan Cordova and Robert Garza were arrested, each of whom gave a statement. (RR 40 at 20). Juan Ramirez was arrested and gave a statement. (RR 40 at 21). Reymundo Sauceda was arrested and gave a statement. (RR 40 at 21).

The prosecution's examination of Ramiro Ruiz changed to a question and answer session regarding "what he learned as a result of his investigation." For example, Ramiro Ruiz testifies that he "learned" that these individuals are not only members of the Tri-City Bombers, but are also charged with this capital murder. (RR 40 at 28-29). This colloquy occurs immediately after the jury learns that these individuals were arrested in connection with these murders and that they gave statements in connection with theirs and others' involvement. For example, when asked how it was that Investigator Ruiz came to know that Marcial Bocanegra

was involved in this case, Investigator Ruiz responded
"Because he was another individual that Guadalupe named
as being involved." (RR 39 at 141). Another example
occurs when Investigator Ruiz is asked:

> Q.   Now, after Marcial Bocanegra gave a statement
>      on January 21, 2003, were there further
>      arrests in this case?
>
> A.   Yes.
>
> Q.   Now who was it that was arrested?

Any common sense would lead this jury to make the
logical leap that the "*investigation*" from which Ramiro
Ruiz "*learned*" consists of the statements given him by
those individuals listed in State's exhibit 101.  Even
the trial Judge made this connection.  (RR 39 at 138-
139).

Appellant respectfully requests this Court sustain
these points of error, reverse Appellant's conviction
and render a judgment of acquittal.  Alternatively,
Appellant respectfully requests this Court reverse
Appellant's conviction and remand this case for a new
trial in order to afford Appellant a fair trial.

<u>Point Of Error Number 25</u>

The Court Reversibly Erred By Charging The Jury To Use
One Theory Of Parties Liability (*Intention To*

91

*Aid/Assist A Conspiracy*) To Make Appellant A Conspirator To Commit Robbery, And Then Using A Theory Of Conspiracy Liability (*Should Have Anticipated*) To Make Appellant Responsible For The Acts Of Co-Conspirators in violation of Appellant's 5th,6[th],8[th] and 14th Amendments to the United States Constitution.

Point Of Error Number 26

The Evidence Was Constitutionally Insufficient (*Jackson V. Virginia*) To Convince Any Rational Juror Beyond Reasonable Doubt That Appellant Was Guilty Of Capital Murder Under The Law Of Parties, Except To The Extent That The Jury Might Have Been Misled By The Charge Into Believing That A Person Who Assists A Conspiracy In The Way Appellant Did Can Be Regarded As A Co-Conspirator Himself.

*Appellant joins Points of Error 25 and 26 in the following argument.*

A.   The Charge

The standard for reviewing a jury charge for error is first, to determine whether error actually exists in the jury charge and then whether sufficient harm resulted from the error to such a degree that reversal is required. *See Abdnor v. State*, 871 S.W.2d 726 731-732 (Tex.Crim.App.1994). Appellant asserts that there is "some" actual, rather than theoretical, harm as a result of the jury in the instant case being charged by the court the way they were charged. *See Reyes v. State*, 938 S.W.2d 718, 723 (Tex.Crim.App.1996); *Arline*

92

*v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986).
Appellant asserts that even if the jury charge is not
erroneous, it is certainly misleading. It is read with
great difficulty, even with the legally trained eye; it
is inconceivable that even intelligent jurors untrained
in the law could understand it.

The jury in this case was charged and allowed to
use one theory of parties liability (*intention to aid
or assist a conspiracy*) to make Appellant a
"conspirator" to commit a robbery, and then use a
separate and distinct theory of parties culpability
(*should have anticipated*) to make Appellant responsible
for the acts of the co-conspirators. (CR 574-583). The
law of parties as applied in this case made it
unnecessary to show any intent to commit murder and
instead allowed Appellant's conviction for capital
murder because "the murder occurred in furtherance of
the conspiracy to carry out a different felony and the
defendant should have anticipated that the murder would
occur." *See* V.T.C.A. Penal Code Section 7.02(b); *Ruiz
v. State*, 579 S.W.2d 206 (Tex.Crim.App.1979). But
before the jury gets there, the jury is charged on the

93

law of parties as contemplated by the Texas Penal Code, Section 7.01. That is, the jury is first asked to find beyond a reasonable doubt that Appellant is a "party" to a conspiracy to commit robbery and *then* asked to find beyond a reasonable doubt that Appellant, now acting as a "co-conspirator," should have anticipated that a murder would occur. CR 574-583. Appellant asserts that the trial court improperly did this.

First of all, the evidence at trial was clear that Appellant was present neither during the robbery, nor at the time of the murders. (RR 40 at 29-30); (RR 41 at 9-10); (RR 44 at 153.). The State relied on evidence that the weapons used during the robbery and ultimately used to commit the murders belonged to Appellant in order to make Appellant a "party" to the conspiracy and therefore a "conspirator." (RR 43 at 60; RR 40 at 29-30)  The problem here is the charge allowed the jury to use one theory of parties liability (*aiding and abetting*) to make Appellant a party to the conspiracy to commit robbery, and *then* use another separate and distinct theory of parties culpability (*should have anticipated*) to make him responsible for the acts of

the co-defendants. V.T.C.A. Penal Code *Sections 7.01 and 7.02(b)*; (CR 574-583). Assuming arguendo if Appellant was actually a "co-conspirator" in the robbery, Appellant could be held responsible for the murders committed by his co-conspirators, if he should have anticipated them, *but* where Appellant merely *assists* a conspiracy to commit robbery must not automatically make Appellant a co-conspirator such that he would be responsible for the acts of those others, the *actual conspirators*. He is only a "*party*" to the conspiracy regarding the robbery under the "aid or assist" theory. To be a co-conspirator, as contemplated by the Texas Penal Code and the jury charge itself in the instant case, Appellant must have actually taken part in the agreement to commit the robbery. The testimony from Reyes Ramirez illustrated quite the opposite:

> Q.   So isn't safe to say that as a result of your investigation, based on all these interviews that you and your officers conducted, you have no evidence to bring to this jury that Mr. Medrano had any knowledge of his own personal knowledge of what was going to happen?
>
> A.   That's correct, sir.
>
> *(RR 43 at 100)*

95

Q.   All right. Do you have any evidence to bring
     to this jury that Mr. Medrano actually had
     knowing and intentional knowledge of the crime
     that was about to be committed on January 5

A.   No Sir.

(RR 43 at 103)

Nothing in the record reflects that Appellant took part in either the inception or the planning of the conspiracy. Neither did Appellant himself agree to commit the robbery. Rather, after others, the co-defendants, without Appellant's knowledge, reached the "agreement" Appellant was ordered to furnish weapons for use by the co-defendants. The evidence showed that Appellant was in town paying bills and basically hanging out with his wife when he received a call ordering him to provide weapons. *(RR 43 at 60)* It was a misfortune that Appellant even knew that the weapons were going to be used in a robbery. (RR 43 at 63-64) They might have ordered Appellant to drop the weapons off without even telling him what these weapons would be used for, and Appellant would have done so.

The real problem is that the evidence does not prove that Appellant is guilty of capital murder

because it does not prove that he was a co-conspirator to the robbery. Rather, if it proves anything, it proves that he was a *party to the conspiracy* since, acting with intent to promote or assist the conspiracy Appellant only aided the conspiracy by furnishing weapons. See for example *Navarro v. State, 776 S.W.2nd 710(Tex. App. – Corpus Christi 1989)* where the Court held the evidence insufficient to support a conviction under the law of parties.   In *Navarro*, as in the instant case, although defendant supplied the weapon to his companion, nothing in evidence established that the defendant supplied the weapon with intent that the companion commit murder. Id. at 714.   Again, in *Navarro* as in the instant case, no circumstances prior to the shooting indicated that defendant intended to kill or cause serious bodily injury to the victim.   Note that in *Navarro*,  the Trial Court only charged the jury under Texas Penal Code Section 7.02(a)(2).  However, in *Navarro* as in the instant case, the State's theory was that defendant initiated the offense by providing the weapon.  The Court in *Navarro* acknowledged that but for defendant's obtaining the gun and handing it to Macias,

the murder would not have occurred.   But the *Navarro* Court  further  reasoned  that  the  other  circumstances surrounding  the  murder  failed  to  show  that  *Navarro's* acts  were  committed  with  the  intent  to  kill  or  to assist or promote the other in committing murder. Id at 714.

Here, all the jury had to do is determine whether Appellant "should have anticipated" the end result…the murders. Arguably, the fact that Appellant was *told* about the plan to commit robbery *after* the agreement was made elsewhere by others made him a *party to the conspiracy* and perhaps to the robbery itself (because it could be said that Appellant may have acted with intent to aid or assist the co-defendants by supplying weapons for the robbery to the conspirators), but it did  not  make  Appellant  a  *co*-conspirator  because Appellant was not one of those who entered into that agreement  to  commit  robbery. Appellant  asserts  that like  the  Court  in  Navarro  recognized,  other circumstances in this case simply failed to show that Appellant's acts were committed with the intent to kill or to assist or promote the commission of the murders.

And, not being a conspirator himself, Appellant should not have been held to be culpable for the criminal acts of those others, the actual conspirators.

Appellant respectfully requests this Court reverse Appellant's conviction and render a judgment of acquittal. Alternatively, Appellant respectfully requests this Court reverse Appellant's conviction and remand this case for a new trial in order to afford Appellant a fair trial.

### Point Of Error Number 27

The Sentencing Scheme Contemplated In Article 37.071 Section 2(a)(2)(b)(2) Of The Texas Code Of Criminal Procedure Is Unconstitutional Because It Allows The Jury To Consider The Law Of Parties In Answering Special Issue Number Two At Punishment.

### Point Of Error Number 28

The Evidence Was Insufficient To Prove Appellant Actually Anticipated That A Life Would Be Taken As Contemplated By Special Issue Number Two.

### Point Of Error Number 29

The Evidence Did Not Satisfy The Constitutional Requirements Of *Enmund V. Florida* And *Tison V. Arizona* So That The Imposition Of The Death Penalty On Appellant Is Inconsistent With The Eighth And Fourteenth Amendments To The United States Constitution.

*Appellant hereby joins Points of Error Number 27 through 29 for Argument only.*

## ARGUMENT

A.   37.071 Section 2(a)(2)(b)(2)

After finding Appellant guilty of capital murder,
the jury was then charged with Answering the "special
issues" to allow the court to impose either a life
sentence or a death sentence.   The Jury answered the
special issues in such a way that authorized the trial
court to impose a sentence of death.   (RR 48 at 5-6,9-
10)

The jury was called to answer Special Issue Number
two as follows:

> Special Issue Number 2:
>
> Do you find from the evidence beyond a
> reasonable doubt that RODOLFO ALVAREZ MEDRANO,
> the defendant himself, actually caused the
> deaths of Jimmy Almendarez, Juan Delgado, III,
> Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben
> Castillo, and Ray Hidalgo, the deceased, on
> the occasion in question, or, if he did not
> actually cause the death of the deceased, that
> he intended to kill the deceased or another or
> anticipated that a human life would be taken.

(CR 2 at 648)

In the beginning of the Charge on Punishment, the jury is reminded that they have found Appellant guilty of the offense of Capital Murder. The jury is now required, in considering the special issues, to consider all of the evidence in the case. (CR 2 at 645). Necessarily, then since the jury was charged at the guilt/innocence phase on the law of parties, it will consider the law of parties at this punishment phase. This is only logical given that the court instructed the jury to consider "all the evidence in the case." (CR 2 at 645). Secondly the plain language of the statute and special issue number two as it appears in the charge on punishment in this case allows by implication the use of the law of parties. V.A.C.C.P. Section 37.071 2 (a)(2)(b)(2); (CR at 648).

Reading the statute literally, the plain language of special issue number two allows the jury to hold a "non-triggerman" vicariously responsible for the conduct of the actual shooter(s) in answering this special issue affirmatively. Special issue number two incorporates the wording of the law of parties that the

101

jury considered during its deliberation in the guilt/innocence phase. Since the jury was not specifically instructed *not* to apply the party theory of culpability to special issue number two, in its natural progression from the guilt/innocence frame of mind, the jury used the same law of parties theory of culpability in answering special issue number two. To believe otherwise calls for a false confidence in twelve people with no training in either the law or legal nuances to understand that the instructions they received at the guilt/innocence phase of trial do not apply to the punishment phase. In other words, this jury cannot have been expected to dissociate the facts, circumstances and instructions they received at guilt innocence from those they received at punishment.

B.   *Enmund* and *Tison* Claim

Appellant contends that the imposition of the death penalty in light of the extraordinary circumstances in this case, violates the cruel and unusual punishment clause of the United States Constitution. The court's charge at guilt/innocence charged that the jury could convict Appellant pursuant

to the law of parties theory of culpability.  (CR 2 at 574-583)  The facts in the instant case illustrate that while Appellant lent some perfectly legal guns to the shooter(s), Appellant had no intent to kill or to assist or promote another in committing murder. Neither did Appellant participate in any way with the planning or the execution of any conspiracy, nor did Appellant himself kill, attempt to kill, or intend that a killing take place. (RR 43 at 100,103)

There was no evidence to show the existence of any previous agreement between Appellant and the shooter(s) to take the life of anyone.  The fact that Appellant provided weapons, albeit perfectly legal weapons, to the shooter(s) which were ultimately used to kill the deceased does not, in and of itself, make him a party to the killing.  *Navarro v. State*, 776 S.W.2nd 710,714 (Tex. App. Corpus Christi 1989).

In *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) petitioner and a co-defendant were tried by a jury, found guilty of first-degree murder of two elderly persons at their farmhouse and sentenced to death.   The Florida Supreme Court

affirmed, holding although the record supported no more than the inference that petitioner was the "get-away driver," this was enough under Florida law to make petitioner a constructive aider and abettor and hence a principal in first-degree murder upon whom the death penalty could be imposed. It was thus irrelevant to petitioner's challenge to the death sentence that he did not himself kill and was not present at the killings, nor whether he intended the victims be killed or anticipated that lethal force might be used to effectuate the robbery or escape.   The Supreme  Court of the United States granted Enmund's petition for certiorari, presenting the question "whether death is a valid penalty under the Eighth and Fourteenth Amendments for one whom neither took life, attempted to take life, nor intended to take life."   The Supreme Court of the United States held that the imposition of the death penalty upon petitioner was *inconsistent* with the Eighth and Fourteenth Amendments. *Id.*at 3372-3379; U.S. Cons. amends. VIII, XIV.

In *Enmund*, the robbers committed murder but they were subjected to the death penalty only because they

killed as well as robbed. The question before the
*Enmund* Court was not the disproportionality of death as
a penalty for murder, but rather the validity of
capital punishment for *Enmund's own conduct*. The
*Enmund* Court held that the focus must be on *his*
culpability, not on that of those who committed the
robbery and shot the victims, for we insist on
"individualized consideration as a constitutional
requirement in imposing the death sentence." *Lockett v.*
*Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57
L.Ed.2d 973 (1978). Accordingly, we must focus on
'relevant facets of the character and record of the
individual offender.'" *Woodson v. North Carolina*, 428
U.S. 280, 304, 96 S.Ct. 2978, 2991 49 L.Ed.2d 944
(1976). Enmund himself, like Appellant in the instant
case, did not kill or attempt to kill. Appellant
asserts that the record in the instant case, not unlike
the record before the Supreme Court in Enmund, does not
warrant a finding that Appellant had any intention of
participating in or facilitating a murder. In Enmund
however, death was an authorized penalty because Enmund
aided and abetted a robbery in the course of which

murder was committed.   Enmund did not kill or intend to kill and thus *his* culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the Kerseys.   This was impermissible under the Eighth Amendment.

The facts in *Enmund* are not unlike the facts in the instant case.  Enmund was the "proverbial" getaway driver satisfying the law of parties example that the State here used to educate potential jurors during individual voir dire. (RR 31 at 14-15). Like *Enmund*, the facts in the instant case show that Appellant was not present at the time of the killings. (RR 40 at 29-30; RR 41 at 9-10) The record on appeal here then is clear that Appellant did not actually cause the deaths of the deceased.   The record is just as clear that Appellant did not *intend to kill* the deceased. The question whether or not Appellant "anticipated that a life would be taken," requires, among other things, that the jury find Appellant actually "anticipated that a human life would be taken."  This is inconsistent with the "should have anticipated" language found in

the charge of the court at the guilt/innocence stage of the trial and used to find Appellant guilty of capital murder in the first place. (CR 2 at 579; 648).   At best, the evidence adduced at trial here could be interpreted to show that Appellant had an intent to aid and/or abet a conspiracy to commit robbery, thereby making himself a party thereto.

Appellant's case then can be said to be no different than that of *Enmund*.   Just as in *Enmund*, Appellant here neither killed anyone nor assisted in any manner the shooters in committing the murders.

Although *Tison v. Arizona*, 481, U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) does not attempt to precisely delineate the particular *types* of conduct and states of mind warranting imposition of the death penalty, the Supreme Court in *Tison* did hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement.

Appellant's case provides that his participation in the murders was absolutely none.   Arguably, Appellant made himself a party to the conspiracy to

commit robbery when he lent guns to the shooter(s) for purposes of stealing marijuana, not for killing. However, by no means was Appellant's participation in these murders sufficient to satisfy the first prong of the *Tison* test, whether Appellant was a major participant in the felony committed. This should absolve Appellant from reaching the second *Tison* prong: whether the evidence showed that Appellant acted with reckless indifference to human life. However, for argument's sake, Appellant asserts that there was no evidence that Appellant acted with reckless indifference to human life.

Because Article 37.071, Section 2(a)(2)(b)(2) embraces the law of parties in its phraseology, the jury in this case continued to consider the parties instruction from the guilt/innocence stage for punishment. Further since neither the *Enmund* nor *Tison* requirements are met in the instant case, Appellant respectfully requests this Court sustain these points of error, reverse Appellant's conviction and render a judgment of acquittal and set the judgment and imposition of death aside. Alternatively, Appellant

respectfully requests this Court reverse Appellant's
conviction and remand this case in order to afford
Appellant a fair trial.

## POINT OF ERROR NUMBER 30

The Trial Court Reversibly Erred By Admitting Evidence
Of Appellant's Knowledge Of An Unrelated Murder, The
Donna Killings, violating Appellant's 5th, 6th, 8th and
14th Amendments of the U.S. Constitution.

Appellant here contends the trial court erred when
it allowed the State to introduce evidence of an
extraneous offense of Capital Murder, which had not
resulted in a final conviction. (RR 43 at 5-12)(See
Gilbert v. State, 781 S.W.2d 296 (Tex.App. – Ft.Worth,
1988); See also Booker, III v. State, 929 S.W.2d 57
(Tex.App. – Beaumont, 1996). The defense tried to have
this portion of Appellant's statement redacted. (RR 42
at 68 -76); (RR 43 at 4-12). Specifically, the State
and defense agreed to redact certain portions of the
transcript of Appellant's statement before offering it
to the jury. There were several portions that were
agreed to, however, the Court denied defense counsel's
specific request to redact that portion regarding the
"Donna killings." (RR 43 at 12).

It is a fundamental principle of law that an

109

accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App.1983). It is improper to try a defendant for being a criminal. *Alba v. State*, 905 S.W.2d 581, 585 (Tex.Crim.App.1995), cert denied, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). The State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). That is, an extraneous offense must be shown to be *relevant,* apart from character conformity, before it may be admitted into evidence. *Alba*, supra. Even if relevant, the extraneous offense must further be shown to have more probative value than prejudicial impact. Appellant properly requested the trial court to engage in the balancing test prescribed under Texas Rule of Evidence 403. (RR 43 at 12).

The fact that appellant was indicted in another capital murder is irrelevant to *this* case and highly prejudicial to the Appellant. The general rule is that

evidence of other crimes, wrongs, or acts of a person is not admissible to prove the person's character in order to show that he acted in conformity with that character.    Tex.R.Crim.Evid. 404(b). There can be no permissible use for the Donna Killings evidence under rule 404(b).   The State's purpose of publishing to the jury that Appellant is involved in yet another capital murder, indicted however un-convicted, must have been for no other purpose but to show that Appellant was of a criminal character. Accordingly, Appellant asserts that the introduction of this evidence as to Appellant's involvement in another unrelated, indicted yet un-convicted, capital murder was error.

This error occurred during the guilt-innocence stage of Appellant's trial.   (RR 43 at 86-89). Secondly, this error must call for reversal. Rose v. State, 752 S.W.2d 529, 553 (Tex.Crim.App.1988)(opinion on reh'g).   Appellant further asserts that this error made great contribution to the conviction.   This extraneous matter involved the mistaken execution of four women pursuant to an ordered "hit" made by a member of the same Tri-City Bombers gang that Appellant

dealt with throughout the trial. This evidence could not have served to prove a material issue other than Appellant's character and/or the character of the Tri-City Bombers and by association, Appellant's conformity therewith.   (RR 43 at 86-89). This evidence did not serve to make more probable either an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Montgomery v. State*, 810 S.W.2d 372, 387-388 (Tex.Crim.App.1991)(opinion on reh'g).

The introduction of this extraneous information/evidence was extremely prejudicial to the determination of guilt or innocence and violated Appellant's 5th, 6th and 8th and 14th Amendment's to the U.S. Constitution in *this* case. Accordingly, Appellant respectfully requests that this Court sustain these points of error, reverse Appellant's conviction and render a judgment of acquittal. Alternatively, Appellant respectfully requests that this Court reverse Appellant's conviction and remand to afford Appellant a fair trial.

### Point of Error Number 31

The Trial Court Reversibly Erred By Admitting Appellant's Oral Statement As Voluntarily Given.

### Point of error Number 32

The Trial Court Reversibly Erred By Admitting Recorded Statement Of Appellant In Violation Of Article 38.22 Of The Texas Code Of Criminal Procedure.

### Point of Error Number 33

The Trial Court Reversibly Erred By Admitting Appellant's Oral Statement In Violation Of Appellant's 5th Amendment Rights.

*Appellant joins Points of Error Number 31 through 33 for purposes of Argument only.*

### ARGUMENT

A.   Invocation of rights

Appellant satisfied the first question of *Edwards v. Arizona* when he clearly communicated his desire for a lawyer and further communicated that he refused to speak with any law enforcement agent without an attorney.  (RR 15 at 22, 72); *Edwards v. Arizona*, 451 U.S. 484 (1981); *Smith v. Illinois*, 469 U.S. 91, 95 (1984). In fact, the record reflects that Appellant positively and affirmatively invoked his 5th Amendment right to remain silent and to counsel on at least two different occasions, once when the Texas Rangers

113

attempted to speak with him and again when FBI attempted to speak with him. (RR 15 at 22, 47, 72-73). Once Appellant requested an attorney and refused to be interviewed, he should have been provided an attorney. Reyes Ramirez understood this very well as indicated by his testimony when he said, "When a defendant asks for an attorney -- we just don't talk to him." (RR 43 at 42).

B. No Valid Waiver

Here, the invocation was unequivocal and Reyes Ramirez understood that. (RR 43 at 42). While Reyes Ramirez testifies that Appellant initiated the communication, the audio recording of Appellant's statement does not reflect that Appellant retracted this assertion. (RR 15 at 72-73). Appellant asserts that the State did not satisfy its burden to establish that Appellant voluntarily and intelligently waived his Fifth Amendment rights after affirmatively invoking them. *See e.g. Wilkerson v. State*, 657 S.W.2d 784, 793 (Tex.Crim.App1983). After invoking his rights, any subsequent waiver simply cannot be held to have been intelligently and voluntarily given since Appellant was

114

not provided the consent and advice of counsel that he requested. Once Appellant invoked his Fifth Amendment right to counsel, he must not have been further interrogated. *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378(1981).

In *Wilkerson* this Court quoted *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and asked: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Wilkerson*, at 791-792. Thus, the question is whether the State has met its "heavy burden" of establishing a "knowing and intelligent relinquishment or abandonment of a known right or privilege." This is reviewed on a case-by-case basis. *Wilkerson*, at 792. Appellant asserts that the circumstances and specific facts surrounding this case, especially the fact that Appellant invoked his rights on two separate occasions prior to allegedly "volunteering to cooperate with Reyes Ramirez,"

establish that the State did not meet this heavy
burden.

In the instant case, it's clear from the record
that Appellant invoked his right to remain silent and
to his right to counsel. (RR 15 at 22, 47, 72-73).
However, Reyes Ramirez testified that *Appellant* re-
initiated contact such that Appellant waived the rights
he had previously invoked. (RR 43 at 47). But, we also
see from the record that no one "sent word" to Ramirez
that Appellant wanted to speak with him. Rather,
according to Ramirez, Appellant "made contact" with him
when he, Ramirez, was "checking the cell blocks." (RR
43 at 41-42). Then, according to the trial testimony,
Ramirez tells Appellant that if he wishes to cooperate,
he, Appellant, *needs* to tell Ramirez where the weapons
are. (RR 43 at 42). The record at the suppression
hearing further illustrates that Investigator Ramirez
admitted he *convinced* Appellant to waive his rights.
(RR 15 at 22).

After reviewing the record and the inferences
there from in the light most favorable to the trial
court's ruling, Appellant believes that it was Reyes

116

Ramirez who "initiated" the contact to "cooperate with the investigation." Given that Investigator Ramirez sought Appellant "while checking the cell blocks" and given that Investigator Ramirez, by his own admission, convinced Appellant to waive the rights he had previously invoked, Appellant asserts that evidence that Appellant "initiated contact" with Ramirez is absent. Accordingly, Appellant asserts that the State has failed to meet its burden of establishing that Appellant knowingly and intelligently waived his Fifth Amendment right to remain silent and his right to counsel. By this count, Appellant asserts that the State failed to meet their burden of showing that Appellant "initiated contact" subsequent to asserting these rights.

Appellant further asserts the trial court erred in admitting Appellant's oral statement since it did not comply with Art. 38.22 Of the Texas Code of Criminal Procedure.

V.A.C.C.P., Section 38.22 requires that every electronic recording of any statement made by an accused during a custodial interrogation must be

117

preserved until a defendant's conviction is final and all appeals are exhausted. V.A.C.C.P., Section 38.22, Section 3(b). At a suppression hearing, counsel objected to the admissibility of the audio recorded statement. (RR 15 at 29-31). Counsel's objection was couched in terms challenging the authenticity of the "copy" as well as the fact that the original could not be produced. The State further failed to lay the proper predicate for either. By this Count Detective Ramirez could not say what type of recording device was used, nor could Ramirez say where the original recording was. (RR 15 at 70-71). Note that the trial court conditioned the overruling of Counsel's objection: "Assuming that they are going to have the original at the time of trial, your objection is overruled, Mr. Villarreal." (RR 15 at 31). Later, at trial Ramirez admits he hasn't even seen the original. (RR 43 at 45).

Accordingly, the trial court reversibly erred by admitting Appellant's statement obtained under these circumstances. Appellant respectfully requests that this Court sustain this point of error and hold that

Appellant's statement should have been suppressed, reverse the judgment of the trial court and remand these proceedings with instructions accordingly.

### Point of Error Number 34

This Case Should Be Reversed For Cumulative Error.

### ARGUMENT

A.   Hearsay and the Sixth Amendment

Appellant has set out in these Points of Error repeated instances of the State eliciting hearsay testimony in violation of Appellant's Sixth and Fourteenth Amendments.   The effort on the part of the State further violated Appellant's statutory rights regarding the hearsay rule.   This labor forced Appellant to deal with statements obviously made out-of-court by co-defendants without the benefit of his right to confront and cross-examine.

B.   Criminal Street Gangs

The State repeatedly introduced evidence regarding "criminal street gangs," their violent and criminal nature and Appellant's affiliation with the Tri-City Bombers.   This further demonstrates the purposeful

119

nature of the State's effort to deprive Appellant of his Constitutional rights to a fair trial.

C. Law of Parties and Law of Conspirator Responsibility

The State's repeated admission to the Court and the Jury throughout trial that they needed to prove neither that appellant had specific intent to commit murder nor that appellant intended or anticipated that death result illustrates a dilution in the State's Burden of Proof regarding the elements of capital murder beyond a reasonable doubt. To allow this conviction for capital murder with a criminally negligent "should have anticipated" culpable mental state unfairly prejudiced Appellant and compromised his 5th, 6th, 8th, and 14th Amendments to the United States Constitution.

D. Unconstitutional Application of the Death Penalty.

The evidence adduced at trial satisfied the requirements of neither *Enmund v. Florida* nor *Tison v. Arizona*. To allow this conviction to stand and this punishment to be imposed violates the threshold qualifications for the imposition of the death penalty

as set out in *Enmund* and *Tison* and further serves to violate Appellants 8th and 14th Amendments rights under the United States Constitution.

Considering all this and for the reasons set forth hereinabove, Appellant respectfully asserts that the cumulative nature of those errors more specifically argued in points of error 1-34 served to deprive appellant of his constitutional rights to a fair trial as well as due process and equal protection under the law.

PRAYER

Wherefore, premises considered, Appellant respectfully requests this Court to vacate Appellant's conviction and render a verdict of acquittal. Alternatively, Appellant requests this Court to reverse and remand for a new trial or to reform this judgment to a life sentence. Additionally, Appellant prays for such other and further relief to which he may be justly entitled at law or in equity.

Respectfully submitted,

Hector J. Villarreal
P.O. Box 3867
Edinburg, Texas 78540
(956) 383-8131 Telephone
(956) 383-6603 Facsimile

By: _____
Hector J. Villarreal
State Bar No. 20582700

O. Rene Flores, P.C.
P.O. Box 1769
Edinburg, Texas 78540
(956) 383-9090 Telephone
(956) 383-9050 Facsimile

By: _____
   O. Rene Flores, P.C.
   State Bar No. 24012637

**ATTORNEY FOR DEFENDANT**

122

## CERTIFICATE OF SERVICE

This is to certify that on December _18th_, 2006, a true and correct copy of the above and foregoing document was served on the following:

Rodolfo Alvarez Medrano
TDC# 00999501
3872 FM 350 South
Livingston, Texas 77351
Via Regular Mail

Hon. Ted Hake Assistant District Attorney
100 N. Closner
Edinburg, Texas 78539
Via Hand Delivery

Hon. Mathew Paul, State Prosecuting Attorney
P.O. Box 12405, Capitol Station, Austin, Texas 78711
Via Regular Mail

Hector J. Villarreal