United States District Court
Southern District of Texas

**ENTERED**

January 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RODOLFO ALVAREZ MEDRANO, | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-0069 |
| | § | |
| LORIE DAVIS, Director, Texas Department | § | |
| of Criminal Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## AMENDED REPORT AND RECOMMENDATION

Petitioner Rodolfo Alvarez Medrano, a Texas death row inmate represented by counsel, seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Pending before the Court is Petitioner's Motion to Stay Proceedings Pending Exhaustion of State Remedies. (Docket Entry No. 32). Specifically, Petitioner wishes to return to state court to exhaust his claim that the State's "gang expert" testified falsely at trial, that the State withheld *Brady* evidence regarding the false testimony, and that this violated his constitutional right to due process. (*Id*. at 2.) Respondent Lorie Davis opposes any stay and argues that Petitioner has not shown that he has met the standards required for staying federal habeas corpus proceedings. (Docket Entry No. 34). After carefully considering the pleadings and the applicable law, and for the reasons discussed below, the undersigned recommends that a limited stay should be granted.[1]

---

[1]     The District Court referred this case to the undersigned pursuant to 28 U.S.C. § 636. In general, a magistrate judge may rule directly on non-dispositive matters but may make only recommendations as to dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A), (B); *see also Davidson v. Ga.-Pac., LLC*, 819 F.3d 758, 763 (5th Cir. 2016) (holding that a motion to remand is a dispositive matter on which a magistrate judge may make a recommendation but not an order of remand). Although the Fifth Circuit has yet to address whether a motion to stay a § 2254 proceeding is dispositive or non-dispositive, the Ninth Circuit has found that "'a motion to stay and abey section 2254 proceedings' to exhaust claims 'is generally (but not always) dispositive

## I.  BACKGROUND

In 2003, a Hidalgo County, Texas, grand jury indicted Petitioner for the offense of capital murder.  The indictment alleged that on or about January 5, 2003, Petitioner intentionally and knowingly caused the deaths of six individuals by shooting them with a firearm and that those murders were committed during the same criminal transaction.  Petitioner stood trial in the 332nd District Court, case number CR-0942-03-F, with the Honorable Mario E. Ramirez presiding.

Petitioner was not present at the scene of the six murders, which were committed by multiple co-defendants.  At trial, the State introduced Petitioner's recorded statement admitting that he was a sergeant in the Tri-City Bombers gang.  *Medrano v. State*, No. AP-75,320, 2008 WL 5050076 at *3 (Tex. Crim. App. November 26, 2008) (unpublished opinion).  Petitioner's role in the murders was to provide assault-type rifles to fellow gang members, who Petitioner had reason to believe would use the rifles in committing a robbery to steal drugs.  *Id*. at *3-*4.  At least two of the murder victims were believed to be members of a rival gang, the Texas Chicano Brothers.

Among other witnesses, the State called Robert Alvarez, who was then a detective with the Edinburg Police Department, to testify as a gang expert:

> He testified that the two gangs had a "green light," which is a standing order to
> "represent" the gang every time they see each other. He explained that the green

---

of the unexhausted claims.'" *Bastidas v. Chappell*, 791 F.3d 1155, 1163 (9th Cir. 2015) (quoting *Mitchell v. Valenzuela*, 791 F.3d 1166, 1173-74 (9th Cir. 2015)).  Here, Petitioner is requesting a stay to exhaust claims, and thus an order denying his motion would appear to be dispositive of at least one of his habeas claims.  On the other hand, granting his motion may not be dispositive as to any of his claims. *See Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1694 (2015) (noting that "it is of course quite common for the finality of a decision to depend on which way the decision goes").  Nevertheless, Petitioner's motion to stay will be addressed by report and recommendation in an abundance of caution.

light gives gang members authority, without asking permission, to "do whatever is necessary" to represent their gang, including murder. He stated that this particular green light has existed for years and that anyone in the gang would be aware of any green light against any other gang.

*Id*. at *5.

The jury ultimately convicted Petitioner of capital murder under a conspiracy theory. After a separate punishment phase, Petitioner received a death sentence in August 2005.

Petitioner filed a direct appeal to the Texas Court of Criminal Appeals raising thirty-four grounds for relief. The Court of Criminal Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. *See id*.

During the pendency of his direct appeal, Petitioner filed a state habeas application raising nine grounds for relief. The trial court entered findings of fact and conclusions of law recommending that relief be denied. On February 8, 2017, the Court of Criminal Appeals denied habeas relief. *Ex parte Rodolfo Medrano*, 532 S.W.3d 395, 395 (Tex. Crim. App. 2017).

On February 7, 2018, Petitioner filed a timely federal petition for a writ of habeas corpus. Petitioner amended his petition on January 14, 2019. (Docket No. 19.) The amended petition raises several claims not previously presented to, or adjudicated by, the state courts. In one of those claims, Claim III, Petitioner argues that "the testimony of purported 'gang expert' Robert Alvarez was false both as to his credentials, qualifications, and training, and as to its substance, which exaggerated petitioner's culpability and resulted in the violation of petitioner's right to due process under the Fourteenth Amendment to the United States Constitution." (Docket No. 19 at 52-53.) Petitioner provides a detailed statement of the factual and legal support for this claim. (*Id*. at 53-90.)

The issue now before the Court is whether this action should be stayed to allow the exhaustion of state court remedies as to Claim III.  The parties have fully briefed this issue.  (*See* Docket Nos. 32, 34, 35.)

## II. ANALYSIS

Petitioner's motion to stay focuses on the third claim in his federal habeas petition. (Docket No. 32 at 2.)  Petitioner concedes that he has not exhausted his third claim, but he also contends that "[a]ssertion of that claim in Texas state court is not procedurally barred."  (*Id*. at 3.)

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas relief may not be granted unless the petitioner has exhausted available state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "The exhaustion doctrine . . . turns on an inquiry into what procedures are 'available' under state law."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).  If a state court remedy remains available to a petitioner, the "district court has discretion to stay a mixed petition . . . to allow a habeas petitioner to present his unexhausted claims to the state court in the first instance, then return to federal court for review of his perfected petition."  *Day v. McDonough*, 547 U.S. 198, 210 n.10 (2006).  Otherwise, a federal court may review an inmate's unexhausted claims only if he shows: (1) cause and actual prejudice or (2) that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent[.]'"  *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Petitioner argues that "[b]ecause [he] has an available state court remedy . . . this Court should grant the motion to stay proceedings, thereby allowing Petitioner to return to state court and afford the state courts the first opportunity to make the factual findings upon which this claim depends."  (Docket Entry No. 39 at 3.)  As the Supreme Court has long recognized,

"[d]istrict courts do ordinarily have authority to issue stays, *see Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L.Ed. 153 (1936), where such a stay would be a proper exercise of discretion, *see Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L.Ed.2d 945 (1997)." *Rhines v. Weber*, 544 U.S. 269, 276 (2005); *see also Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998) (stating that the "district court clearly had authority to either abate or dismiss" a federal habeas petition). "AEDPA does not deprive district courts of that authority, . . . but it does circumscribe their discretion." *Rhines*, 544 U.S. at 276 (citation omitted). A court must be mindful that an improper stay may impinge on AEDPA's purpose to prevent unnecessary delay and to encourage the timely exhaustion of remedies. *Id*.

In *Rhines*, "the Supreme Court held that a district court has discretion to stay a mixed petition [containing both exhausted and unexhausted claims] to allow a habeas petitioner to present his unexhausted claims to the state court in the first instance, then return to federal court." *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). Such a stay is available "only in limited circumstances" where (1) "good cause" exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless"; and (3) the petitioner has not engaged in "abusive litigation tactics or intentional delay." *Rhines*, 544 U.S. at 277. Given AEDPA's goals of "encouraging finality" and "streamlining federal habeas proceedings," a district court would abuse its discretion in granting a stay where those three conditions are not present. *Id*. "On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition" if those circumstances are met. *Id*. at 278.

Petitioner argues that he can satisfy all three prongs of the *Rhines* analysis. Respondent disagrees.

### A.    Good Cause

Petitioner argues that he can show good cause because (1) the State suppressed material that would serve to prove the falsity of Officer Alvarez's testimony and (2) Petitioner's attorney on state habeas review provided ineffective assistance by not discovering and raising the claim earlier.  (Docket No. 32 at 4.)

The Supreme Court in *Rhines* did not discuss the "good cause" standard.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court provided an example of good cause, noting that "a petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" to file a protective federal petition and request a stay until state remedies are exhausted.  *Id*. at 416 (citing *Rhines*, 544 U.S. at 278).  The Fifth Circuit has suggested that the Supreme Court "intended the district court find 'good cause' in the equitable sense," rather than a "technical sense."  *Ruiz*, 504 F.3d at 529 n.17.

At least one federal court has found that good cause may be shown where, as here, the alleged suppression of evidence under *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963), prevented the petitioner from learning of potentially impeaching evidence.  *See Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011) (finding good cause to excuse a procedural default where the petitioner alleged that the state prosecution wrongfully withheld impeachment evidence; citing *Rhines*, 544 U.S. at 278).  Similarly, good cause for a *Rhines* stay has been found based on ineffective assistance of state post-conviction counsel.  *Blake v. Baker*, 745 F.3d 977, 983 (9th Cir. 2014); *see also Ruiz*, 504 F.3d at 529 n.17 (noting with apparent approval that the district court found good cause based on the deficiencies of state habeas counsel).

Whether or not the State has suppressed evidence in this case, which could serve as a basis to find good cause, is inextricably intertwined with the merits of Petitioner's unexhausted

claim.  Noting that Petitioner's "'cause' is the same as the underlying claim," Respond argues

that Petitioner cannot show good cause because his underlying claim is "plainly meritless."

(Docket No. 34 at 3.)  Accordingly, under the circumstances here, whether Petitioner has shown

good cause to support a *Rhines* stay turns on whether his unexhausted claim is plainly meritless.[2]

**B.     Not Plainly Meritless**

Petitioner argues that his third claim is not plainly meritless.  Respondent counters that

Petitioner's claim is plainly meritless both because the claim itself lacks merit and because the

state courts would not provide a forum for its consideration in a new habeas action.

1.     Substantive Merit

Petitioner provides detailed factual and legal support for Claim III in his amended

petition.  (Docket No. 19 at 52-90.)  As noted, Petitioner claims that the State presented

testimony at trial from its gang expert, Robert Alvarez, that was false both as to his credentials

and as to its substance.  Petitioner points out that Alvarez was an Edinburgh police officer at the

time of trial, but he was later ordered to surrender his peace officer's license after pleading guilty

to misuse of official information (a third-degree felony).[3]  (*Id*. at 54.)  Petitioner's assertion that

Alvarez lied about certain aspects of his qualifications as a gang expert appears to be supported

by undisputed documentation.  (*Id*. at 62-69.)   In support of his contention that the substance of

Alvarez's testimony was false, Petitioner offers evidence from multiple scholars with seemingly

impressive credentials.  (*Id*. at 69-82.)

---

[2]     Petitioner's allegation that his state habeas counsel rendered ineffective assistance
regarding Claim III might also support a finding of good cause.  *See Blake*, 745 F.3d at 982-83.
For the reasons that follow above, however, it is unnecessary to decide that issue.

[3]     Alvarez had been indicted on eight felony counts that included charges of violating the
civil rights of a person in custody, theft by a public servant, and tampering with governmental
records.  (*Id*. at 54.)  While these events occurred after Petitioner's trial and ultimately may not
be relevant in deciding his claim, they tend to add some perspective in considering whether
Petitioner's Claim III is plainly meritless.

Respondent, in turn, argues that Claim III is substantively meritless and refers to the

arguments raised in her motion for summary judgment.  (Docket No. 34 at 3.)  Respondent's

summary judgment argument includes the following points:

- The State did not suppress *Brady* evidence because much of the undisclosed information
  about Alvarez's qualifications existed before trial and could have been discovered.

- If the substance of Alvarez's testimony was false, there is no evidence that he knew it.

- There is no evidence that Alvarez knew that other experts would disagree with his
  opinions.

- The suggested evidence was not material because the outcome of the trial would not have
  been different had Alvarez been impeached based on his qualifications.

- Alvarez's testimony has not been shown to be false since Petitioner's experts lack
  expertise on gangs in Hidalgo and Starr counties.

- Alvarez's testimony about the significance of a gang's "green light" on another gang was
  not materially different from statements by Petitioner's experts.

(*See* Docket No. 30 at 43-56.)  Not surprisingly, in his reply to the summary judgment motion,

Petitioner responds in detail to each of those points.  (Docket No. 39 at 41-52.)

The Supreme Court and Fifth Circuit have not elaborated on the "plainly meritless"

standard.  Other courts have found a claim "potentially meritorious unless it is perfectly clear

that the petitioner has no hope of prevailing" or his claims "are legally impossible or lack any

factual support." *Tarselli v. Superintendent Green SCI*, 726 F. App'x 869, 876 (3rd Cir. 2018)

(quotations and citations omitted).  Petitioner's third claim meets this low bar.

Petitioner has presented significant evidence and plausible legal arguments in support of

his claim.  While Respondent has raised a substantial challenge to Claim III, there are contested

issues that are not obvious or easily resolved.  In short, it cannot be said that Claim III is "plainly

meritless."[4]   In the interest of comity and federalism, the state courts should be given the

opportunity to decide the merits of Claim III first, should they determine that it is not

procedurally barred under state law.[5]   *See Rose v. Lundy*, 455 U.S. 509, 515-19 (1982)

(explaining that "[t]he exhaustion doctrine is principally designed to protect the state courts' role

in the enforcement of federal law and prevent disruption of state judicial proceedings") (citation

omitted).

>   2.      Procedural Bar

Respondent also argues that Claim III is plainly meritless because the state courts would

find it to be procedurally barred.  (Docket No. 34 at 4-9.)  Petitioner, on the other hand, contends

that he "has a viable state court remedy for the unexhausted claim set forth in Ground III."

(Docket No. 32 at 6-8.)

Respondent is correct that Petitioner's unexhausted claim would be "plainly meritless" if

he were "now procedurally barred from raising [that] claim[] in state court." *Neville v. Dretke*,

423 F.3d 474, 480 (5th Cir. 2005).   Texas strictly enforces its abuse-of-the-writ doctrine

(codified at Tex. Code Crim. Pro. art. 11.071 § 5(a)) and generally prohibits the filing of

---

[4]      In reaching this conclusion, the undersigned need not—and does not—express any view on whether Claim III ultimately has merit or whether an evidentiary hearing would be necessary to decide this claim.

[5]      As the Ninth Circuit has explained:
>   In determining whether a claim is "plainly meritless," principles of comity and
>   federalism demand that the federal court refrain from ruling on the merits of the
>   claim unless "it is perfectly clear that the petitioner has no hope of
>   prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary
>   rule would deprive state courts of the opportunity to address a colorable federal
>   claim in the first instance and grant relief if they believe it is
>   warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71
>   L.Ed.2d 379 (1982)).

*Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (holding that the district court should have granted the petitioner's motion for a *Rhines* stay).

successive habeas applications.  Texas law, nonetheless, sanctions the filing of a successive state

habeas application in three limited circumstances:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an
> initial application, a court may not consider the merits of or grant relief based on
> the subsequent application unless the application contains sufficient specific facts
> establishing that:
>
>> (1) the current claims and issues have not been and could not have
>> been presented previously in a timely initial application or in a
>> previously considered application filed under this article or Article
>> 11.07 because the factual or legal basis for the claim was
>> unavailable on the date the applicant filed the previous application;
>>
>> (2) by a preponderance of the evidence, but for a violation of the
>> United States Constitution no rational juror could have found the
>> applicant guilty beyond a reasonable doubt; or
>>
>> (3) by clear and convincing evidence, but for a violation of the
>> United States Constitution no rational juror would have answered
>> in the state's favor one or more of the special issues that were
>> submitted to the jury in the applicant's trial under Article 37.071,
>> 37.0711, or 37.072.

Tex. Code Crim. Proc. Art. 11.071 § 5.

Petitioner argues that he can meet Texas' exceptions to its abuse-of-the-writ doctrine.  In

fact, Petitioner argues that he satisfies all three of these exceptional circumstances.  (Docket No.

32 at 6-8; Docket No. 35 at 4-6.)  Respondent contends that Petitioner cannot meet any of the

three state-law abuse-of-the-writ exceptions.[6]  (Docket No. 34, 5-9.)  In his reply brief, Petitioner

cites multiple Texas cases for the proposition that the Texas Court of Criminal Appeals "has

routinely authorized subsequent applications in the face of *Brady* violations."  (Docket No. 35 at

5-6.)

---

[6]     Respondent also states that "Medrano makes no argument that he meets the statutory
requirements to present these claims in a subsequent writ."  (Docket Entry No. 34 at 4.)  It is
unclear what Respondent means by this.  As noted above, Petitioner's briefing discusses how he
may be able to comply with each of the three statutory exceptions to Texas' abuse-of-the-writ
doctrine.  (Docket Entry No. 32 at 6-8.)

In *Wilder v. Cockrell*, 274 F.3d 255, 262-63 (5th Cir. 2001), the Fifth Circuit addressed the State's argument that the petitioner had procedurally defaulted an unexhausted due process claim based on *Chambers v. Mississippi*, 410 U.S. 284 (1973) (addressing the admissibility of exculpatory third-party confessions).   While noting that "Texas does significantly restrict successive habeas petitions," *id*. at 262, the Fifth Circuit nevertheless concluded that, "because it is not entirely clear that Texas' subsequent-application bar would prohibit consideration of the *Chambers* claim, Texas courts should make that determination."  *Id*. at 262-63.

The same conclusion applies here.  While Respondent may be correct that the state courts will find Claim III procedurally defaulted as a matter of state law, such a result is far from "entirely clear" based on the record and arguments of the parties in this case.  As in *Wilder*, "the State should be allowed to make the procedural bar, *vel non*, determination."[7]  *Id*. at 262.

## C.      Absence of Abusive Litigation Tactics or Intentional Delay

Finally, Petitioner asserts that the state court record "contains no hint of intentionally dilatory litigation tactics."  (Docket No. 32 at 8.)  Respondent counters that because "Medrano failed to raise a claim of constitutional error based on false testimony until over thirteen years after his conviction, and over sixteen months after filing his federal petition for habeas corpus, his motion to stay proceedings at this point constitutes intentionally dilatory litigation tactics."  (Docket No. 34 at 11.)  In reply, Petitioner acknowledges that his initial Petition reflected his

---

[7]      In response to Petitioner's argument that the state abuse-of-the-writ exceptions should be "contest[ed] before the Texas courts," Respond asserts that "this argument would permit a stay any time there was an unexhausted claim, thereby rendering *Rhines*, and the Fifth Circuit's decisions construing such, worthless."  (Docket No. 34 at 4-5.)  While Respondent's concern is laudable, it is misplaced here.  Unlike many cases in which a petitioner seeks to exhaust a claim that is plainly barred under state law, Petitioner Medrano's unexhausted claim is factually and legally plausible, and it is unclear whether Texas courts will find it to be procedurally barred.  Again, though, in reaching this conclusion, the undersigned expresses no view on the ultimate merits of Claim III.  *See supra* n.4.

intention to file a motion seeking a *Rhines* stay, but he points out that he did file such a motion "following receipt of Respondent's answer, which provided him the information he needed to determine whether such a motion was necessary, as well as specifically he needed to assert in that motion."[8]  (Docket No. 35 at 7.)

The circumstances here do not suggest that Petitioner has engaged in "intentionally dilatory litigation tactics."[9]  *Rhines*, 544 U.S. at 277-78.  Importantly, Petitioner Medrano seeks to return to state court to exhaust Claim III *before* litigating his habeas claims in federal court. *Compare Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012) (affirming denial of a *Rhines* stay where the petitioner's "motion for a stay, only after the federal district court denied his habeas petition, suggests that [he] strategically waited for the outcome and now seeks a second bite at the apple").   Respondent's argument that Petitioner waited too long to assert Claim III goes to the merits of that claim, which, as already discussed, should be considered first by the state courts.

Petitioner has thus satisfied the three conditions constituting the "limited circumstances" in which a *Rhines* stay may be appropriate.   While granting a stay and abeyance risks "undermin[ing] AEDPA's goal of streamlining federal habeas proceedings," *Rhines*, 544 U.S. at 277, as applied in this case it also tends to serve the laudable aims of comity and federalism. Even where a stay is appropriate, however, "district courts should place reasonable time limits on a petitioner's trip to state court and back."  *Id*. at 278.   Consistent with this admonition,

---

[8]     Petitioner notes that Respondent did not file her answer until 14 months after the initial Petition was filed.  (Docket No. 35 at 7.)  Respondent sought and received two extensions of time in which to respond to the Petition.  (*See* Docket Nos. 20, 21, 28, 29.)  While noting this delay, Petitioner does not suggest that Respondent has been guilty of dilatory tactics.  (Docket No. 35 at 7.)

[9]     Based on the nature and circumstances of this case, the undersigned finds that neither party has engaged in dilatory or otherwise improper litigation tactics before this Court.

Petitioner should be directed to pursue state court remedies within 30 days after a stay is entered and to return to federal court within 30 days after completing state court exhaustion. *See id*.

## III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Petitioner's motion to stay (Docket No. 32) be **GRANTED**, that this case be **STAYED** and **ADMINISTRATIVELY CLOSED**, and that Petitioner be **ORDERED** to initiate state court remedies within thirty (30) days after the stay is entered and to move to re-open this case within thirty (30) days after the conclusion of the state litigation.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to counsel for the parties, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on January 15, 2020.

Peter E. Ormsby
United States Magistrate Judge